## JONES v. PETTIGREW.

That trees had to be dug and packed before delivery by the seller to the buyer did not bring the sale thereof within Civ. Code, § 1310, declaring an agreement to manufacture a thing not within the statute of frauds (sections 1238, 1309) relative to sales of personal property.

A buyer in no manner waived his right to a directed verdict by allowing, without objection, proof to show a sale, where it failed to establish all the things essential to a valid contract, under the statute of frauds (Civ. Code, §§ 1238, 1309.)

A buyer is not obliged to plead the statute of frauds as a defense.

Under the statute permitting defendant to defend or not in a justice's court, without in any manner abridging his right to demand a new trial in the circuit court, a buyer, by failure to raise the question of the statute of frauds in a justice's court, did not preclude himself from making such defense in the circuit court.

(Opinion filed, May 24, 1910.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by John R. Jones against R. F. Pettigrew. From a judgment for defendant and an order denying a new trial, plaintiff appeals. Affirmed.

*Krause* & *Krause,* for appellant. *Muller* & *Conway,* for respondent.

WHITING, P. J. This action was commenced in the justice court by service of a money demand summons followed by a complaint, alleging the delivery by plaintiff to defendant of 200 apple trees for which defendant promised to pay plaintiff the sum of $50, which he has since neglected to pay. The defendant, appearing in justice court, interposed a general denial. Upon trial in justice court the defendant cross-examined the plaintiff, but offered no evidence in his own behalf. The justice court entered judgment for the plaintiff, and defendant appealed to the circuit court, demanding therein a new trial on both issues of law and of

fact. The evidence in the circuit court was limited to that given by plaintiff, who, in substance, testified that he was engaged in farming and raising nursery stock, having an extensive nursery in Minnehaha county (being the county in which this action was brought); that in the month of April the defendant had a conversation with him over the telephone in which defendant ordered 200 apple trees; that defendant asked him if he could send them right away, also asked the price, and was told that it was $25 per hundred; that defendant wanted the trees the next day, and plaintiff told him he could not possibly send them, as he had so many other orders ahead, and it would take some time to fill as large an order as 200 trees; that defendant asked that they be sent by express, and plaintiff advised that they would be too large and bulky; that finally it was agreed that the trees should be sent by freight, and they were so sent, consigned to defendant as per defendant's instructions. Plaintiff testified that to get the trees ready for shipment he had to dig and pack them and haul them to the depot; that they were then growing in his nursery; that he did dig 205 trees. The above contains all the evidence offered, and the same was received without objection, but immediately after the receipt of the above the following objection was interposed: "Defendant now objects to the introduction of any further evidence in this case, and moves to strike out the evidence of the witness here, for the reason that it appears that the amount of this contract was in excess of $50, and no part of the agreement in writing." The court reserved its ruling and the plaintiff rested his case. The defendant then renewed his motion to strike out the evidence for the reasons above stated, and asked the court to direct a verdict in favor of the defendant, for the reason that plaintiff had not shown a contract within the terms and provisions of the law, the contract appearing to be verbal and no acceptance of the property by the defendant shown and no part of the purchase price paid. This motion was sustained, and upon direction of court, a verdict was rendered in favor of the defendant. Judgment having entered thereon and a new trial having been denied, the plaintiff

Vol. 25 S. D. 28.

has appealed to this court from such judgment and order denying a new trial.

The assignments of error may well be condensed under the following contentions on the part of plaintiff, as stated in his brief: "(1) That the contract was such as was not within the statute of frauds. (2) That, even if conceded that the contract was within the statute, the defendant must be held to have waived the effect thereof (a) by his failure to plead the statute in defense; (b) by his failure to object to the proof of the oral contract at the trial in the justice's court, though represented by his attorney who was present at and took active part in said trial; (c) by his failure to object to the evidence showing an oral contract and the evidence of the performance thereof by the plaintiff, upon the trial of the case in the circuit court."

In support of the first contention plaintiff insists that a sale of apple trees does not come under the statute of frauds of this state, but under an exception found in the laws of this state. The statute of frauds of South Dakota, as found in sections 1238 and 1309 of the Revised Civil Code, so far as same pertains to this case, provides that a sale or agreement for sale of personal property for a price of $50 or more is invalid unless the agreement or some note or memorandum thereof be in writing and subscribed by the party to be charged or by his agent, or the buyer accepts or receives part of the thing sold, or the buyer at the time of the sale pays part of the purchase price. Section 1310 of such Code, being the section upon which plaintiff relies, provides: "An agreement to manufacture a thing from materials furnished by the manufacturer or by another is not within the provisions of the last section." Plaintiff contends that, inasmuch as it was necessary for him to perform certain work in preparing these trees for delivery to defendant, the statute of frauds does not apply, and that the facts bring the case under said section 1310. Plaintiff has cited several authorities, but to our mind they are very far from being analogous to the case at bar, even conceding plaintiff's claim that work and labor had to be performed to prepare the trees for delivery. The evidence, however, wholly fails to show that

there was any understanding on the part of the defendant that the trees to be purchased by him were not ready for delivery; and, without such evidence, it would most certainly be presumed that the stock of a nurseryman was in a condition for delivery at the season of year when such stock is customarily sold. But, even if the evidence had shown that, according to the understanding between the parties hereto, the trees had yet to be dug before delivery, yet such fact would not bring this case under said section 1310, such section being intended to cover cases where the main thing contracted for is labor and the material is the incident, not cases where labor is the mere incident to the property sold.

In considering the other questions raised by plaintiff, it is well first to note the difference between our statute and the English statute of frauds, which statute is still found in some of the states. Under the old English statute the contract was valid, the statute declaring it to be not enforceable. Thus the statute went merely to the remedy, prescribing the rules of evidence and declaring that without certain evidence the contract could not be enforced. Under our statute, however, the contract is invalid unless certain requisites for a valid contract exist. Pierce v. Clark, 71 Minn. 114, 73 N. W. 522; Brandeis v. Neustadtl, 13 Wis. 142. In this last case the court distinguishing between the two forms of statutes uses the following language: "Our statute is entirely silent as to the bringing or maintaining of actions upon such contracts, or the kind of evidence by which they shall be established; but the eighth section (chapter 106) declares that every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made. By the tenth section it is enacted that nothing therein contained shall be construed to abridge the powers of courts to compel the specific performance of agreements, in cases of part performance of such agreements. * * * The statute of England, and those which are copied after it, do not touch the contracts embraced in them, nor declare that they shall be illegal

or void unless put in writing. They do not affect their substance, but merely declare that no action shall be brought upon them unless they are in writing, and signed by the party to be charged; or, what amounts to the same thing, they prescribe as a rule of evidence that in all actions where an enforcement of them is sought oral proof of them shall not be admitted. Accordingly, where those statutes prevail, contracts which were legal and actionable before the statute are legal still, and they may be acted on and enforced by the courts whenever the proofs consist of such writings as the statutes require. But the effect of statutes which reach contracts themselves, and make them void, is widely different from that of those which extend to the remedy only, and make them simply not actionable. It may be very true that in many cases the legal effect of statutes of the latter kind is the same as if they had declared the promises or agreements void; but in many others the consequences of considering them void, and of considering them simply not actionable, are very different. This distinction might be illustrated by reference to a great number of cases to be found in the books, but in none more aptly and pointedly than in two which were heretofore decided in this court, and which arose under two statutes formerly in force, regulating the sale of spirituous and intoxicating liquors. In the first case (Johnson v. Meeker, 1 Wis. 436), where the cause of action, being two promissory notes given for the price of a quantity of liquors purchased by the makers, accrued during the continuance of the statute of 1849, but the suit was commenced after its repeal, it was determined that the action might be maintained, notwithstanding the repealed statute, which was in force when the liquors were sold and the notes executed, provided that no suits for liquor bills should be entertained by any of the courts of the state, and that, whenever it should appear to any court before which a suit might be pending on a promissory note that such note was given, in whole or in part, for liquor bills, such court should immediately dismiss such suit at the cost of the plaintiff. The statute did not make the notes void, but suspended the remedy merely, which by its repeal, was at once restored. The other (Gor-

suth v. Butterfield, 2 Wis. 237) was a transaction of a similar character, which took place under the act of 1850. The action was commenced after the act was repealed, upon a promissory note given while it was in force, for a retail liquor bill. The act declared that all notes, accounts, or evidences of debt given for such bills should be void. It was held that as it did not affect the remedy simply, but the cause of action itself, by declaring that it should have no legal existence, the Legislature could not, by a repeal of the law or otherwise, restore it, or give vitality to the supposed contract out of which it arose."

The state of Ohio has a statute similar to the English statute, and in a case before that court (Heaton v. Eldridge, 56 Ohio St. 87, 46 N. E. 638, 36 L. R. A. 817, 60 Am. St. Rep. 737), wherein the court was called upon to determine whether or not a contract entered into in one state and which was before the courts of another state for enforcement should be construed according to the laws of the state where the contract was entered into, or according to those of the jurisdiction of the court, the court among other things said: "The language of the statute under consideration, that no action shall be brought on any agreement therein mentioned unless it, or 'some memorandum or note thereof, is in writing and signed by the party to be charged,' fairly imports that the agreement precedes the written memorandum, and may exist as a complete and valid agreement, independent of the writing. The memorandum, which is merely the evidence of the contract, may be made and signed after the completion of the agreement, and even a letter from the party to be charged, reciting the terms of the agreement, is sufficient to satisfy the requirements of the statute; but it cannot be said that the letter constitutes the agreement. That was made when the minds of the parties met with respect to its terms, and the letter furnishes the necessary evidence to prove the agreement in an action for its enforcement. And, generally, when parties reduce their contracts to writing, the writing becomes the evidence of the agreement which they had previously entered into; and, having adopted that mode of evidencing their agreement, the parties are not allowed to make proof of it by verbal testimony.

This statute, in plain terms, forbids the maintenance of an action in any of the courts of this state, on any agreement which, by its terms, is not to be performed within a year, unless the action is supported by the required written evidence. The evidence by which a contract shall be proved is no part of the contract itself, but its admission or rejection becomes a part of the proceedings on the trial, where its competency and sufficiency must be determined. When the required evidence is lacking, the courts must refuse the enforcement of the contract. And it seems clear that such a statutory regulation prescribing the mode or measure of proof necessary to maintain an action or defense pertains to the remedy, and constitutes a part of the procedure of the forum in administering the remedy. The statute contains no exception or limitation on account of the place where the contract was entered into, or to be performed; but denies remedy on any contract of the kind designated by it, wherever made, which cannot be established by the evidence required."

Considering now the difference between these two classes of statutes—that, under one the contract is valid but not enforceable without certain proof can be made, while under the other the contract itself never becomes valid until it is entered into in the manner prescribed by statute or unless certain part preformance prescribed by statute has taken place—we see that, upon the trial, if one is attempting to prove a state of facts which brings the particular case under the bar of a statute such as we have in South Dakota, it would be an attempt to prove an invalid contract by perfectly competent evidence; while in the other case it would be an attempt to enforce a contract which, under the law, was absolutely valid, but by means of incompetent evidence. Bearing this distinction in mind and applying the same to the case at bar, it must be readly seen that there was nothing incompetent in the proof offered by plaintiff. All that was necessary was for plaintiff to have offered further proof showing acceptance of the trees or payment of purchase price and a valid contract would have been established; but, as the evidence stood when the plaintiff rested his case, while such evidence was competent, it failed to establish

all the things essential to a valid contract, so that, regardless of whether the court rightfully struck the evidence from the record, it was the duty of the trial court, upon motion, to direct a verdict, and the defendant had in no manner waived his right to such directed verdict by allowing competent proof to be received in evidence without interposing objections at the time the evidence was offered.

Under a statute such as ours, rendering the contract invalid, the defendant was not called upon to plead the statute as a defense. In view of his general denial, it was incumbent upon the plaintiff to prove the contract, and to prove one that was valid. Regarding the point made by appellant that the respondent waived his rights by offering no evidence in the justice court, it is clear that the appellant is wrong in this contention. Under our statute, the defendant can defend or not in the justice court, without in any manner abridging his right to demand a new trial in the circuit court retaining, in the circuit court, all rights that he might have exercised in the justice court.

The judgment of the trial court and the order denying a new trial are affirmed.