JOHN B. FRIED, Respondent, v. MARY LONSKI, Appellant.

(188 N. W. 582.)

**Frauds, statute of — statute as to contracts for sale of real property held to render wholly invalid contract falling within; specific performance of oral contract for sale of realty not compelled without part performance.**

1. Section 5963 C. L. 1913 which provides that "no agreement for the sale of real property, or of an interest therein, is valid unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged, or his agent thereunto authorized in writing; but this does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof," affects the validity of a contract, falling within the statute, and renders such contract wholly invalid; and specific performance thereof may not be compelled unless there has been suf-

ficient part performance to take the contract out of the provisions of the statute.

**Frauds, statute of — held available as defense under general denial.**

2.  Where a complaint alleges generally a contract for the sale of real property, without stating whether it was in writing or not, the above quoted statute of frauds is available as a defense under a general denial.

Opinion filed May 12, 1922.

From a judgment of the District court of Stutsman county, *Coffey*, J., defendant appeals.

Reversed.

*Geo. W. Thorp, Harry E. Rittgers,* for appellant.

"Where the defense is available under a general denial, it seems that timely objection should be made to evidence of the oral contract, on the ground that it is incompetent under the statute of frauds." Erickson v. Wiper, 33 N. D. 193.

Under the provisions of our code, the court is authorized to and should allow amendments such as this to conform with the proof and in furtherance of justice. French v. Co., 29 N. D. 426; Southern Com. Co. v. Wier, (S. D.) 148 N. W. 597.

"The courts are practically unanimous that the mere payment of a portion of the purchase money, unaccompanied by any other act, does not amount to part performance of an oral contract, sufficient to take the case out of the statute of frauds." 25 R. C. L. 267, and long list of cases cited from all the federal courts from nearly every state. Merchants State Bank of Fargo v Ruettell, 12 N. D. 519; Heran v. Elmore (S. D.) 157 N. W. 820; Story's Eq. Vol. 2, 760.

"One who makes a contract to sell property of which he had no title, nor the certain means of procuring title, present no facts upon which damages to him may be predicated, if the purchaser withdraws from the contract." 24 N. D. 268.

A court of equity will not decree specific performance and aid the plaintiff in a mere speculation where the plaintiff refuses to publish and expose his title. Brugman v. Charlson (N. D.) 171 N. W. 882, 884; 25 R. C. L. 246, § 49 and cases cited.

*C. S. Buck,* for respondent.

"Where a complaint alleges the contract generally without stating whether it was in writing or not, the statute of frauds is not available as a defense, unless specially pleaded." Abraham v. Durward, 180 N. W. 783.

"A contract to sell or a sale of any goods of the value of five hundred dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods so contracted to be sold or sold, and actually receive the same or unless some note or memorandum in writing of the contract of sale be signed by the party to be charged or his agent in that behalf." (Session Laws, 1917, chap. 202, p. 4) ; Browne, (Browne, St. of Frauds, 5th ed. § 135) says:

"As the statute of frauds affects only the remedy upon the contract, giving the party sought to be charged upon it a defense to an action for that purpose, if the requirements of the statute be not fulfilled, it is obvious that he may waive such protection, or rather that, except as he undertakes to avail himself of such protection, the contract is perfectly good against him."

This principle has been recognized and enforced by this court. Erickson v. Wiper, 33 N. D. 193, 203, 204, 157 N. W. 592; Groff v. Cook, 34 N. D. 136, 157 N. W. 973.

CHRISTIANSON, J. This is an action brought by a vendor to compel the specific performance of a certain alleged executory contract for the sale of land. The trial court made findings and conclusions in favor of the plaintiff, and the defendant has appealed from the judgment entered thereon and demanded a trial anew in this court.

In his complaint the plaintiff alleges :

"That on the 20th day of October, 1920, he entered into a contract with the defendant wherein and whereby he agreed to sell to the defendant and the defendant agreed to buy from him lot 151 in Jones & Vennum's addition to the city of Jamestown for the agreed price of $2,800, on the following terms, to wit, that the defendant was to pay within one week from said 20th day of October, 1920, the sum of $1,200 in cash and assume the payment of a mortgage now existing on said premises in the sum of $1,600, and that on the 20th day of October, 1920, the defendant herein paid to the plaintiff in cash the sum of $100 to apply upon the purchase price of said lot 151.

"That on the 28th day of October, 1920, plaintiff herein tendered to the defendant a good and sufficient warranty deed of conveyance for the above premises with the proper amount of revenue stamps attached

thereto, which deed conveyed to the defendant herein the above described lot 151 in Jones & Vennum's addition to the city of Jamestown, and that the defendant refused to accept said deed and refused to pay the balance of $1,100 in accordance with the agreement entered into on the 20th day of October, 1920."

The prayer for judgment is:

"That the defendant herein be required to specifically perform the contract entered into between herself and the plaintiff herein on the 20th day of October, 1920, and accept the deed of conveyance for said lot 151 in Jones & Vennum's addition to the city of Jamestown, N. D., and pay to the plaintiff the sum of $1,100 with interest thereon at the rate of 6 per cent. per annum from the 28th day of October, 1920, and for such other and further relief as shall be equitable, and for his costs and disbursements herein."

To this complaint the defendant interposed a general denial, and the case came on for trial upon the issues thus framed. At the commencement of the trial the defendant's counsel objected to the introduction of any evidence on the ground that the complaint failed to state a cause of action, in this, that it failed to allege that the contract sued upon was in writing. And during the examination of witnesses defendant's counsel at the very first opportunity objected to the introduction of any and all evidence offered relating to oral negotiations or arrangements between the plaintiff and the defendant on the ground that the statute required all contracts like the one sought to be enforced in this suit to be in writing; and that the prior oral negotiations would be merged in the written contract. These objections were all overruled. At the conclusion of plaintiff's case, the defendant moved for judgment on the ground that the plaintiff had failed to establish a contract; that there was no contract in writing as required by law; that under the statute all contracts relating to the sale of land were invalid unless in writing; that the payment relied upon as part performance was not part performance; that the evidence adduced showed that the plaintiff was not the owner of the premises; and that no deed, executed by the plaintiff Fried, had been tendered to the defendant. This motion was denied.

The defendant introduced no evidence, so the only evidence adduced was that offered by the plaintiff. The evidence so introduced, shows that the plaintiff is a real estate dealer in the city of Jamestown. The defendant, who is a widow, came to see the plaintiff some days prior to October 20, 1920, with respect to the purchase of a house. He showed

her several houses at various prices. Among others was one referred to as the Anderson house; and, according to the testimony of the plaintiff, the defendant stated that she would take this house at $2,500. A day or two thereafter a daughter of the defendant called plaintiff on the telephone and stated that her mother had decided that she would rather have another house which the plaintiff had shown her, known as the Dancer house, which house the plaintiff had offered to the defendant for $2,800. In said telephone conversation the daughter stated that the defendant would pay $1,200 in cash and assume a $1,600 mortgage against the property. Thereupon the plaintiff sent his clerk, one Gasal, out to the farm where the defendant was living and obtained a check for $100 signed by one of the defendant's sons as payment on the Dancer house. The plaintiff did not own the property at any time. It had merely been listed with him by the owner, under an arrangement whereby the plaintiff was to act as a broker in making sale, and was to receive as compensation all he received over $2,500. Shortly after Gasal returned with the $100 check from the defendant, Gasal and Fried went to see Dancer and Dancer and his wife executed a deed to Gasal for the property involved in this suit. It was understood that this deed was to be used in transferring the title to Lonski, and that the owner, Dancer, was not to be paid until Fried had received the money from Mrs. Lonski. There is no contention that Fried or Gasal ever paid Dancer for the property, or that they agreed to pay him otherwise than out of the moneys received from Mrs. Lonski. Some two or three days after the deed had been executed by Dancer and his wife to Gasal, Fried received another telephone call from one of defendant's sons to the effect that the defendant had changed her mind and did not want to purchase the property at all, and some days later the defendant, Mrs Lonski, came to plaintiff's office, and stated that she was unable to raise the money required and desired to be relieved from the contract.

The appellant contends that the evidence in this case does not establish a valid contract, that the alleged oral contract referred to in the evidence adduced by the plaintiff was invalid under the statute of frauds, and that there was not such part performance as to render it enforceable. The respondent, on the other hand, contends that the defendant is in no position to assert the invalidity of the contract for the reason that the statute of frauds was not specially pleaded. The statute involved reads:

"No agreement for the sale of real property, or of an interest therein, is valid unless the same, or some note or memorandum thereof, is in writ-

ing and subscribed by the party to be charged, or his agent thereunto authorized in writing; but this does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof." Section 5963, C. L. 1913.

The question thus presented has never been determined by this court. In Erickson v. Wiper, 33 N. D. 193, 157 N. W. 592, and Groff v. Cook, 34 N. D. 126, 157 N. W. 973, the statute was in no manner raised in the court below either by pleading or by objection to the evidence, but was attempted to be raised for the first time in the appellate court. In Abraham v. Durward (N. D.) 180 N. W. 783, we held that the statute of frauds embodied in the Uniform Sales Act affected only the remedy upon the contract, and that—

"Where the complaint alleges the contract generally, without stating whether it was in writing or not, the statute of frauds is not available as a defense unless specially pleaded."

In the decision in that case, however, we pointed out that the statute there involved was quite different from the statute quoted above. The statute involved in the Abraham Case provided that "a contract to sell or a sale of any goods * * * of the value of five hundred dollars, or upwards shall not be enforceable by action," unless the requirements of the statute are fulfilled. The statute involved here says that "no agreement for the sale of real property, or of an interest therein, is valid," unless the requirements of the statute are fulfilled. In other words, the statute of frauds embodied in the Uniform Sales Act by its terms purports to affect the remedy only; whereas, the statute of frauds involved in this case by its terms "affects the validity of the contract." That was the conclusion reached by the Circuit Court of Appeals of this circuit in construing this statute. See Thos. J. Baird Inv. Co. v. Harris, 209 Fed. 291, 126 C. C. A. 217. The same conclusion was reached by the Supreme Courts of South Dakota and California in construing statutes identical with § 5963, C L. 1913. See Jones v. Pettigrew, 25 S. D. 432, 127 N. W. 538; Feeney v. Howard, 79 Cal. 525, 21 Pac. 984, 4 L. R. A. 826, 12 Am. St. Rep. 162.

The distinction pointed out by these courts there between the provisions of the different statutes of fraud, and the resultant effect as regards the mode of pleading the statute, has (as was intimated in Abraham v. Durward) been recognized by the courts and legal writers generally.

The Encyclopedia of Pleading & Practice says:

"While there is no little conflict of opinion regarding the proper mode of taking advantage of the statute of frauds, it may be laid down as a sound and generally accepted rule, with certain exceptions in some jurisdictions, to be noticed hereafter, that, unless it appears otherwise that the contract declared on is obnoxious to the statute, the party seeking its protection must specially insist on it in his pleadings. The reason for this rule is obvious. A parol agreement is neither illegal nor void under the law. The statute of frauds requiring the contract to be in writing is simply a weapon of defense which the party entitled may or may not use for his protection. If he does not specially by plea or answer set it up and rely upon it as a defense he cannot afterwards avail himself of its benefits." 9 Ency. Pl. & Pr. pp. 705—707.

"In those states where a contract obnoxious to the statute is void, and not merely voidable, it is held that the objection may be taken at the trial without pleading the statute." 9 Ency. Pl. & Pr. p. 712.

See, also, Wood on Statute of Frauds, § 537.

In Jones v. Pettigrew, supra, the court said:

"In considering the other questions raised by plaintiff, it is well first to note the difference between our statute and the old English statute of frauds, which statute is still found in some of the states. Under the old English statute the contract was valid, the statute declaring it to be not enforceable. Thus the statute went merely to the remedy, prescribing the rules of evidence and declaring that without certain evidence the contract could not be enforced. Under our statute, however, the contract is invalid unless certain requisites for a valid contract exist. * * * 'The statute of England, and those which are copied after it, do not touch the contracts embraced in them, nor declare that they shall be illegal or void unless put in writing They do not affect their substance, but merely declare that no action shall be brought upon them unless they are in writing, and signed by the party to be charged; or, what amounts to the same thing, they prescribe as a rule of evidence that in all actions where an enforcement of them is sought oral proof of them shall not be admitted. Accordingly, where those statutes prevail, contracts which were legal and actionable before the statute are legal still, and they may be acted on and enforced by the courts whenever the proofs consist of such writings as the statutes require. But the effect of statutes which reach contracts themselves, and make them void, is widely different from that of those which extend to the remedy only, and make them simply not actionable.' * * *

"Considering now the difference between these two classes of statutes—that, under one the contract is valid but not enforceable without certain proof can be made, while under the other the contract itself never becomes valid until it is entered into in the manner prescribed by statute or unless certain part performance prescribed by statute has taken place—we see that, upon the trial, if one is attempting to prove a state of facts which brings the particular case under the bar of a statute such as we have in South Dakota, it would be an attempt to prove an invalid contract by perfectly competent evidence; while in the other case it would be an attempt to enforce a contract which, under the law, was absolutely valid, but by means of incompetent evidence. * * *

"Under a statute such as ours, rendering the contract invalid, the defendant was not called upon to plead the statute as a defense.   In view of his general denial, it was incumbent upon the plaintiff to prove the contract, and to prove one that was valid."   25 S. D. 435—439, 127 N. W. 539—541. '

In Feeney v. Howard, supra, the California court said:

"We think it clear upon principle that under our statute of frauds and system of pleading it is sufficient to deny the contract without referring to the statute.   The old chancery idea that the statute must be specially pleaded grew out of and is based upon the assumption that a parol contract within the statute had some kind of validity.   And one of the objects of the pleadings in chancery being for the discovery of evidence, we can readily see how the doctrine arose.   But our statute declares, not merely that no action shall be maintained upon contracts within its operation, but that they are 'invalid.'   A parol contract within such a statute is void."   79 Cal. 535, 536, 21 Pac. 988, 4 L. R. A. 826, 12 Am. St. Rep. 162.

We are agreed that under the pleadings in this case, the defendant was in position to invoke the statute of frauds upon the trial.

We are also agreed that the contract sought to be enforced is within the statute of frauds, and that there was no such part performances thereof as to take it out of the operation of the statute.   The only part performance claimed is the payment of $100 on the purchase price.   The overwhelming weight of authority is to the effect that part payment of the purchase price is not in itself sufficient part performance to take a contract out of the statute of frauds and warrant the court in compelling specific performance thereof.   5 Pomeroy's Equity Jurisprudence, § 2246 (Pomeroy's Equitable Remedies, § 824) ; 2 Story's Equity Jurispru-

dence (14th ed.) § 1046; 26 Am. & Eng. Ency. L. 2d ed.) p. 54; 36 Cyc. 650.

It follows from what has been said that the judgment appealed from must be reversed, and the case dismissed. That will be the judgment of this court.

BIRDZELL, C. J., and ROBINSON and BRONSON, JJ., concur.

GRACE, J. (specially concurring). Plaitniff brought this action to enforce specific performance of an alleged contract claimed to have been made between the defendant and him, whereby it is claimed she agreed to purchase certain premises, consisting of a house and lot, located in the city of Jamestown, at the agreed purchase price of $2,800.

The complaint is in the ordinary form in such actions. The answer is a general denial. If we are correctly informed of the facts, Fried never was at any time the owner of the premises. As we understand the facts, he merely had a right as a broker to find a purchaser for the premises. The terms of agency were not reduced to writing. He was not authorized by the owner of the premises in writing or otherwise, so far as the record shows, to make a contract of sale in his own name. In such circumstances, we think it is not necessary to cite authority to demonstrate that he had no legal right to make in his own name a sale of the premises, nor a contract therefor.

As we view the matter, there was no contract, as he was without authority to make one. There is no contract therefore to specifically enforce. The result arrived at in the principal opinion is correct, and I concur in it.