## In Re PETERSON'S Estate.

PETERSON, Respondent, v. PETERSON, et al, Appellants.

(226 N. W. 641.)

(File No. 6454.   Opinion filed August 3, 1929.)

*A. J. Beck,* of Alcester, for Appellants.

*Thomas McInerny,* of Elk Point, for Respondent.

MISER, C.   Respondent is the widow of Charles Peterson, who, at the time of his death, was a resident and landowner in Union county.   Appellants are the daughters of Charles Peterson, and the executrices of his will.   On respondent's petition, the county court of Union county ordered appellants, who had filed no inventory of exempt property, to pay over to respondent the sum of $750 as additional exemption allowed by Rev. Code 1919, § 3346, and the further sum of $50 per month for her support during administration, pursuant to section 3349.   From this judgment of the county court the executrices appealed to the circuit court.   On a trial thereof, the circuit court found, among other things, that Charles and Emily Peterson intermarried in August, 1917; that, on June 6, 1925, Charles Peterson made the will aforesaid, which was thereafter duly admitted to probate; that, on the 6th day of June, Charles and Emily signed an instrument entitled "Memorandum of Oral Antenuptial Agreement of Parties Hereto"; that the estate was of the value of $34,629.35; that respondent had not sufficient property of her own to maintain her; that she had elected to take as her exempt property $750 in money; that said sum was insufficient for her support; and that the sum of $50 a month was a reasonable sum to be allowed for her support pending the administration.   From a judgment entered thereon confirming the order of the county court and from an order denying motion for a new trial, the executrices have appealed.

Appellants denied, in their answer, the right of the widow to the money prayed for in her petition, pleading in bar thereof the oral antenuptial contract, under the terms of which they claim the rights claimed by the widow to have been expressly and specifically waived.   While not admitting that, in August, 1917, she entered into the oral antenuptial contract, the terms of which are purported to be recited in the instrument entitled "Memorandum of Oral Antenuptial Agreement of Parties Hereto," signed on June 6, 1925, respondent contends that an oral antenuptial contract, void for the reason that it was not in writing, as required by section 855, Rev. Code 1919, cannot be validated by reducing the same to writing after the marriage has been consummated.

No contention is made by appellants that the instrument signed on June 6, 1925, was intended to be anything more than a "Memorandum of Oral Antenuptial Agreement" of the parties thereto,

reciting the terms of an oral agreement made eight years before, and giving reasons for such recital. Assuming that the parties thereto could, on June 6, 1925, have entered into a contract with each other, and by the use of apt language respondent might have waived her rights as surviving widow to the moneys allowed by sections 3346 and 3349, it is readily apparent, from the instrument signed, that it was not their intent to make a new contract to that effect on June 6, 1925, nor is it unreasonable that respondent's husband, having in mind the intent to give to her an annuity of $100 in lieu of her distributive share of an estate of $34,629.35, preferred to make a written memorandum of the oral antenuptial agreement rather than to make a new agreement with respondent, whose situation and relationship were manifestly different than they were in 1917. We may then proceed upon the assumption that the instrument in question was, in fact, a postnuptial written memorandum of an oral antenuptial agreement.

May an oral antenuptial agreement, invalid under our statute of frauds, be validated by being reduced to writing after marriage? In Frazer v. Andrews, 134 Iowa, 621, 112 N. W. 92, 93, 11 L. R. A. (N. S.) 593, 13 Ann. Cas. 556, it was well said: "In such cases the authorities from other states are in hopeless conflict"—citing cases holding the instrument good as well as cases to the contrary. The Iowa court continued: "In view of this conflict in the cases, it is manifest that apparently sound reasons may be given for either conclusion."

Because of the unanimity of courts in declaring that the difference in the statutes of frauds in the various states is of high, if not decisive, importance in deciding this question, our statute of frauds must be kept clearly in mind. Section 855, Rev. Code 1919, is in part as follows: "The following contracts are invalid unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent: * * * 2. An agreement made upon consideration of marriage, other than a mutual promise to marry."

In Jones v. Pettigrew, 25 S. D. 432, 127 N. W. 538, 539, this court said: "It is well first to note the difference between our statute and the old English statute of frauds, which statute is still found in some of the states. Under the old English statute the contract was valid, the statute declaring it to be not enforceable.

Thus the statute went merely to the remedy, prescribing the rules of evidence and declaring that without certain evidence the contract could not be enforced. Under our statute, however, the contract is invalid unless certain requisites for a valid contract exist."

In that case the court quoted at length and with approval the language of Dixon, C. J., in Brandeis v. Neustadtl, 13 Wis. 142, which has been cited by text-writers and by the courts of many states in discussing the distinction between those statutes which declare contracts "invalid" or "void" and those statutes which are copied after the English statute. The opinion in Jones v. Pettigrew, supra, has been cited and followed by this court in Shumway v. Kitzman, 28 S. D. 577, 134 N. W. 325; Carpenter v. Murphy, 40 S. D. 280, 283, 167 N. W. 175; Schoniger v. Logan, 43 S. D. 228, 232, 178 N. W. 929; Brown v. Wisconsin Granite Co., 47 S. D. 635, 639, 201 N. W. 555, 557, and by the North Dakota court in Fried v. Lonski, 48 N. D. 1023, 188 N. W. 582, 584, where it is quoted at length. No distinction is drawn between those statutes which use the word "void" and those which use the word "invalid." Indeed, the California court, in Feeney v. Howard, 79 Cal. 525, 536, 21 P. 984, 988 (4 L. R. A. 826, 12 Am. St. Rep. 162), says of a statute identical with ours: "Our statute declares, not merely that no action shall be maintained upon contracts within its operation, but that they are 'invalid.' A parol contract within such a statute is void."

The Montana court, in Dreidlein v. Manger, 69 Mont. 155, 220 P. 1107, 1109, discussing the meaning of "invalid" in a statute identical with ours, concludes: "In our opinion the word 'invalid,' as employed in these statutes means void; of no force or effect."

If, then, we accept this definition of the word "invalid" as used in our statute, as was at least inferentially done in Jones v. Pettigrew, supra, by following the Wisconsin decision in Brandeis v. Neustadtl, supra, when we come to consider the effect of a postnuptial memorandum upon an antenuptial agreement, the decision of the Wisconsin court on that precise point has added interest.

Rowell v. Barber, 142 Wis. 304, 125 N. W. 937, 27 L. R. A. (N. S.) 1140, is based on facts very like the facts of the case at bar, and ably presents respondent's contentions herein. In that case, after determining that the agreement then under consideration had been made "in consideration of marriage," the court said:

"So we approach the question whether such oral agreement entered into before marriage by being reduced to writing and signed after marriage became a valid antenuptial contract. The obvious purpose of the written contract made after marriage, reciting the oral agreement made before marriage, was to remove from within the ban of the statute such oral agreement. It is plain that the written agreement relied upon as an antenuptial contract could have no force as such but for the oral agreement made before marriage. It seems equally clear under our statute that the oral agreement was absolutely void. How a void agreement which has no vitality whatever can be brought into force and vigor by another agreement made by the parties after they are disqualified to make the one which is void is not easy to understand. If this can be done, it is an easy way of avoiding the statute. If our statute were similar to the English statute of frauds and the statutes of the majority of the states which follow either literally or in substance the English statute, the proposition would be quite different. * * * In Brandeis v. Neustadtl, supra, the court said, at page 149 of 13 Wis.: 'A contract declared void by statute is in all respects a nullity. It can not for any purpose be considered as ever having had a being or existence.' This being so, it is difficult to see how the oral antenuptial contract, void by the express provisions of the statute, could be converted into a valid antenuptial contract by a postnuptial agreement. Such a construction of the law would defeat the purpose of the statute. * * * It is true that in Iowa and Indiana it has been held that if, after making an oral antenuptial agreement, the parties after marriage reduce it to writing and in the writing recognize, put in force, and give effect to the prior oral agreement, the written contract will be given effect as an antenuptial contract though signed after marriage. But, as we have seen, the statutes of Iowa and Indiana on this subject are quite different from our own in the essential particular that they do not make the antenuptial oral agreement void, and we think the cases cited from Iowa and Indiana may be distinguished on that ground, if upon no other. * * * However, in Illinois, where the statute is practically the same as the English Statute of Frauds * * * it was held that a verbal antenuptial agreement entered into, signed, and executed after marriage was void. McAnnulty et al v. McAnnulty et al, 120 Ill. 26, 11 N. E. 397, 60 Am. Rep. 552. * * *

It is true that the statute does not provide expressly when the note or memorandum shall be made and signed, and doubtless this might be done after the oral agreement was made and render such agreement valid where the relations of the parties had not changed and no rights intervened. * * * We have been cited to no authority and have found none under a statute like ours which holds that an oral antenuptial agreement void under the statute of frauds can be validated by a postnuptial contract. Such a doctrine would in effect work a judicial repeal of the statute."

�In Rowell v. Barber, supra, is recognized as a strong and well-considered case by the courts of states which, by reason of the different language of their statutes, have reached a different conclusion as to the validating effect of a postnuptial memorandum. Haraldson v. Knutson, 142 Minn. 109, 171 N. W. 201, and Smith & Nye v. Munsell, 94 Vt. 201, 110 A. 12. It has been followed and quoted on this point by the North Dakota court in Fischer v. Dolwig, 39 N. D. 161, 166 N. W. 793. Being therefore guided by our statute as well as by the logic of Rowell v. Barber, supra, which, like Jones v. Pettigrew, supra, follows the reasoning of Brandeis v. Neustadtl, we conclude that the writing of June 6, 1925, did not validate the invalid agreement of August, 1917.

But appellants contend that the contract evidenced by the memorandum of June 6, 1925, was not an "agreement made on consideration of marriage, other than a mutual promise to marry." Appellants' contention is summarized thus: "Though a contract may have been entered into in contemplation of marriage, yet if the marriage was merely an incident and that the contract is supported by other and valuable consideration it does not fall within the statute." 25 R. C. L. 449.

To review the authorities therein cited would serve no useful purpose herein. In view of our reliance on the case of Rowell v. Barber, supra, it would be improper, however, to ignore the fact that a prior Wisconsin case is cited by appellants and in Ruling Case Law in support of this contention. While the question of when a promise is in *consideration of marriage* and within the statute, or when it is merely *in contemplation of marriage*, and therefore not within the statute, is not the primary object of discussion in the extended note to Bader v. Hiscox, 188 Iowa, 986, 174 N. W. 565, found in 10 A. L. R. 321-335, the review of cases

there cited throws light on the question. The Wisconsin case of Larsen v. Johnson, 78 Wis. 300, 47 N. W. 615, 23 Am. St. Rep. 404, is reviewed on page 335 of 10 A. L. R. Certainly the agreement there reviewed differs from the agreement made in the case at bar. Here the parties preface their memorandum with the declaration that they have been advised that their antenuptial agreement is of no effect, unless evidenced by a memorandum. Why, if not in consideration of marriage? The agreement by its terms "witnesseth, that whereas a marriage is about to be solemnized between the parties hereto * * * the party of the first part * * * does hereby agree that if the said marriage is solemnized as aforesaid, that during his natural life, he * * * will provide for her all the necessaries of life, proper and suitable considering their circumstances; and in all things be a good and faithful husband so long as they shall both live. And * * * in case said marriage is solemnized as aforesaid, that in case of his death prior to that of his wife * * * she * * * shall have the use of the real estate now occupied and used * * * as his home * * * and the use of all of the household goods therein, as long as she continue to occupy the same as her home, and further that she in that event shall have out of his property an annuity of $100.00 as long as she shall live, the same to be in lieu of * * * all right she may have by law in [his] said estate."

It is true that there were mutual promises of disclaimer of interest in separate property and waiver of statutory rights, but, to employ the language of Rowell v. Barber, supra, "from the four corners of the instrument we think it is clear that the consideration for the agreement was the promise * * * to marry."

In Koontz v. Koontz, 83 Wash. 180, 145 P. 201, as well as in Alexander v. Alexander, 96 N. J. Eq. 10, 124 A. 523, the authorities on this point are collected and reviewed. In the former case the earlier Wisconsin case cited by appellants is reviewed thus: "In Larsen v. Johnson, 78 Wis. 300, 47 N. W. 615, 23 Am. St. Rep. 404, the agreement was one for support, and the consideration and subject-matter both existed independently of the marriage, so that the contract could operate regardless of any marriage."

Certainly that could not be said of the antenuptial contract in the case at bar. If, as appellants contend, the contract waived the statutory rights declared in sections 3346 and 3349, which have

their very origin in the family relationship, who would say that marriage was merely an incident to the agreement and that the agreement was not made in consideration of marriage? We are cited to no case where the terms of the agreement were exactly as in the case at bar, nor has a rather extended search discovered such a case. We are convinced, however, that the moving consideration for every promise made by each of the contracting parties was the marriage. But for the marriage neither had any right or interest in the property of the other to relinquish when the promise was made. Despite appellants' able presentation, in brief and in oral argument, of all the authorities supporting their contention, we are of the opinion that the agreement was not merely in contemplation of marriage, but was an agreement within the terms of subdivision 2 of section 855, Rev. Code 1919, and therefore must, for reasons hereinbefore stated, be treated as void.

The judgment of the circuit court affirming the judgment of the county court and the order denying motion for a new trial should be, and they are, affirmed.

SHERWOOD, P. J., and POLLEY, CAMPBELL, BURCH, and BROWN, JJ., concur.