#27807-r-SLZ
**2017 S.D. 4**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *


DAVID KNIGGE,                                                 Plaintiff and Appellant,

   v.

B & L FOOD STORES, INC. and
ESTATE OF ROBERT ALLEN
KNIGGE,                                                        Defendants and Appellees.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
SPINK COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE TONY L. PORTRA
Judge

* * * *


STEPHANIE E. POCHOP of
Johnson Pochop & Bartling
Gregory, South Dakota                          Attorneys for plaintiff
                                               and appellant.


KRISTEN M. KOCHEKIAN of
Gillette Law Office, PC
Redfield, South Dakota                         Attorneys for defendants
                                               and appellees.

* * * *


ARGUED ON
JANUARY 10, 2017
OPINION FILED **02/01/17**

#27807

ZINTER, Justice

[¶1.]    David Knigge entered into an oral employment contract with his brother, Robert Knigge, to manage a grocery store that was owned by Robert and his wife Lynette. David entered into the contract in part because Robert had cancer and a limited time to live. The contract allegedly included a severance payment to David if Lynette desired to end David's employment after Robert's death. Robert died five months after the contract was negotiated, and Lynette terminated David's employment two months later. When Lynette refused to pay the severance, David sued to enforce the agreement. The circuit court granted summary judgment dismissing the suit. The court ruled that the oral contract was unenforceable under the statute of frauds. Because this contract was not governed by the statute of frauds, we reverse and remand.

*Facts and Procedural History*

[¶2.]    Robert was a shareholder in corporations that operated grocery stores in Redfield, South Dakota (B & L Food Stores, Inc.), Linton, North Dakota (K & B Foods, Inc.), and Oakes, North Dakota (K & J Foods, Inc.). The B & L stock was owned by Robert and Lynette. Robert actively managed all three stores. Lynette did not participate in management of the Redfield store before Robert's death.

[¶3.]    In October 2011, Robert was diagnosed with stage 4 glioblastoma, a form of brain cancer. He was given approximately eighteen months to live. In November 2012, Robert asked his brother David if he would be interested in managing the Oakes store—which was then being managed by Kalie, Lynette's daughter from a prior marriage. At that time, David had worked for the State as a

-1-

certified public accountant in Pierre for thirty years. Robert and David orally agreed that David would manage the Oakes store without a salary and would have the option to purchase the store for $200,000. When Kalie left the Oakes store prematurely, David resigned from his accounting position and used accrued vacation leave to maintain a steady income while he transitioned to his new position. He put his home up for sale and commuted to Oakes to manage the store on weekends.

[¶4.]     Robert's condition deteriorated, and in January 2013, he was informed that further treatment was unavailable. According to David, Robert wished to maintain the Redfield store as a legacy for his children[1] but felt that his son Jason was not ready to manage it. Because Robert had limited time to live and could not manage the store himself, he asked David to close the Oakes store, move to Redfield, and manage the Redfield store. David accepted the oral employment offer, abandoned his plans to manage and purchase the Oakes store,[2] moved in with Robert and Lynette until he could find a suitable home, and began managing the Redfield store in March 2013. According to David, the contract terms included a $70,200 salary, a bonus based on the store's performance, reimbursement for half of

---

1.    Robert and Lynette had four children together, who were all minors at Robert's death. Robert and Lynette also had adult children from prior marriages. Robert had one adult son, Jason. Robert included two of Lynette's adult children, Kalie and Keith, in the business.

2.    Both Robert and David agreed to close the Oakes store. In his deposition, David testified that they "look[ed] at the Oakes store and . . . decided that it was run down, the equipment was bad, . . . 40 percent of the inventory was outdated, the parking lot needed to be replaced and it would just take too much in the resources to have to continue on with the Oakes store."

David's health insurance costs,[3] the opportunity to invest in future stores, and a $100,000 severance payment if David was terminated for any reason. The terms of the contract were never reduced to writing.

[¶5.] Lynette did not participate in Robert's negotiations with David, but she overheard Robert discussing contract terms on the phone with David, including David's salary and the possibility of a bonus. She contended that she never heard Robert mention a severance package or that David would receive health insurance benefits. She did, however, acknowledge the possibility that Robert had other negotiations regarding David's employment.

[¶6.] Robert died in June 2013. David continued managing the Redfield store until Lynette terminated his employment in August 2013, approximately five months after David's employment began and seven months after the contract was formed. Although Lynette learned of the existence of the severance agreement from two associates approximately a week before she terminated David, she refused to pay David the severance. David subsequently sued B & L and Robert's estate (Defendants) for breach of contract.

[¶7.] Defendants did not dispute the existence of the employment contract. They did, however, dispute the existence of terms providing for both health insurance and the severance payment. They moved for summary judgment, arguing that the oral employment contract was unenforceable under the one-year provision of the statute of frauds. *See* SDCL 53-8-2(1). They contended that the contract could not be performed within one year because it was tied to longer term

---

3. B&L did not offer benefits, including health insurance, to other employees.

contingencies: either David's retirement in ten to fifteen years, or one of Robert and Lynette's children reaching the age of majority and taking over the business. They also contended that promissory estoppel did not remove the contract from the statute. David responded that the contract did not fall within the statute because it could have been performed within one year. David pointed out that Robert was dying, he and Lynette had a strained relationship, and he agreed to the severance payment because he did not want to force Lynette to continue employing him after Robert's death. He also contended that promissory estoppel removed the agreement from the statute.

[¶8.] The circuit court agreed with Defendants and granted their motion for summary judgment. It ruled that the oral contract was unenforceable under the statute of frauds because it could not be performed within one year. The court found that the contract was for an unspecified term of years and tied to contingencies that could not occur in one year: David's retirement in ten to fifteen years or Robert's children reaching adulthood and taking over management of the store. The court also ruled that promissory estoppel did not apply because "[t]he loss of the opportunity to buy the Oakes store for $200,000 [did] not appear to be a substantial economic loss given the number of problems that [David] identified with that store." David appeals.

*Decision*

[¶9.] The statute of frauds, codified in SDCL 53-8-2, renders certain oral contracts unenforceable. The one-year provision of the statute precludes enforcement of an oral "agreement that by its terms is not to be performed within a

year from the making thereof." SDCL 53-8-2(1).[4] However, an oral contract that *could* be performed within one year is not within the statute. *See Trovese v. O'Meara*, 493 N.W.2d 221, 222 (S.D. 1992); *see also* 9 Richard A. Lord, *Williston on Contracts* § 24:3 (4th ed.) (database updated May 2016) ("A promise . . . is not within the statute if at the time the contract is made there is a possibility in law and in fact that full performance such as the parties intended may be completed before the expiration of a year.").

[¶10.] Thus, oral employment contracts for a specified term of years are within the statute if the employment will not end within one year from the time the parties entered into the contract. *Trovese*, 493 N.W.2d at 222 (stating that a contract for one-year term, entered into one week before employment began, was within the statute because it could not be performed for one year and one week); *Brown v. Wis. Granite Co.*, 47 S.D. 635, 201 N.W. 555, 556-57 (1924) (stating that a contract for one-year term, entered into two months before employment began, was within the statute because it could not be performed for one year and two months). And a contract of employment for an indefinite term falls within the statute if the evidence is clear that the parties intended a long-term contract with no expectation

---

4. The one-year provision does not "prohibit the making of a contract that by its terms is not to be performed within one year," but rather makes such contracts unenforceable unless reduced to writing and signed by the party to be charged. *Trovese v. O'Meara*, 493 N.W.2d 221, 222 (S.D. 1992). Some of our cases have stated that an oral contract that violates the statute is invalid. *See, e.g.*, *Harriman v. United Dominion Indus., Inc.*, 2005 S.D. 18, ¶ 15, 693 N.W.2d 44, 49. However, the statute provides that such oral agreements are unenforceable, not invalid. SDCL 53-8-2. *See generally Jones v. Pettigrew*, 25 S.D. 432, 127 N.W. 538, 539-41 (1910) (discussing the difference between unenforceability and invalidity under former statute rendering such contracts invalid).

that performance would be complete within one year. *Harriman v. United Dominion Indus., Inc.*, 2005 S.D. 18, ¶ 20, 693 N.W.2d 44, 49. Termination of employment alone, however, does not remove an oral employment contract from the statute of frauds, even if termination in fact occurred within one year. *See id.*; *Trovese*, 493 N.W.2d at 222; *Brown*, 47 S.D. 635, 201 N.W. at 557. The question is whether the parties intended in law and fact that the contract could be fully performed before the expiration of a year.

[¶11.] Here, the circuit court ruled that David's oral contract fell within the statute because it was tied to contingencies that could not occur within one year (David's retirement or the minor children reaching majority and taking over the business). However, the court failed to address the additional contingency that formed the basis for the alleged $100,000 severance agreement: Lynette ending David's employment after Robert's impending death. On a motion for summary judgment, "[t]he evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party." *Karst v. Shur-Co.*, 2016 S.D. 35, ¶ 15, 878 N.W.2d 604, 612. Viewing the evidence in the light most favorable to David, the nonmoving party, Robert and David contemplated that this contract could be completed within one year.

[¶12.] According to David, he and Robert were concerned about David's employment after Robert's impending death. David testified that they had specifically considered that Lynette and David had a strained relationship, that she might not want David to manage the store after Robert's death, and that they

contemplated that David would not continue to manage the store if that was Lynette's wish. Additionally, although the parties did not know for certain when Robert's death would occur, there is no dispute that Robert had a very limited time to live when he made the contract with David. Indeed, Robert was fifteen months into his eighteen-month prognosis and had been informed that no further treatment was available. Viewing this evidence in a light most favorable to David, David and Robert specifically contemplated David's termination occurring within one year. Under these facts, the contemplated early termination was a method of completing David's performance. Thus, this case is unlike *Harriman*, *Trovese*, and *Brown*, where early termination did not constitute complete performance of the agreements. In this case, early termination was contemplated and therefore the contract "by its terms" could have been performed in law and fact within one year.[5] The circuit court erred in ruling that the contract was unenforceable under the statute of frauds. Because there are disputes of material fact regarding the existence of the

---

5. The Defendants' reliance on *Harriman* is misplaced. In that case, "it [was] clear from the record that the parties did not intend a permanent or lifetime contract. Rather, the parties intended a contract of some unspecified term of years tied to contingencies other than Harriman's lifetime." *Harriman*, 2005 S.D. 18, ¶ 20, 693 N.W.2d at 49. Further, there was no contingency that would take the contract out of the statute. Indeed, the employee's own testimony showed that the contract by its terms could not be performed within one year. *See id.* ¶ 30, 693 N.W.2d at 50-51 (Zinter, J., concurring). David's contract, however, allegedly contained a specific contingency that could occur within one year (Lynette ending the employment relationship after Robert's death), which would complete David's performance, triggering B & L's obligation to make the severance payment.

severance term, we reverse and remand for further proceedings not inconsistent with this opinion.[6]

[¶13.] GILBERTSON, Chief Justice, and SEVERSON, WILBUR, and KERN, Justices, concur.

---

6. David also argues that promissory estoppel should apply to defeat the statute of frauds. Because we conclude that the alleged severance agreement, if found to exist by the trier of fact, is not unenforceable under the statute of frauds, we need not consider David's additional argument.