ADOLF POLLAK, Plaintiff, v. D. E. ROBERTS, Defendant.

(176 N. W. 957.)

**Specific performance — to be enforceable in equity, there must be complete contract.**

1. In order to be enforceable in equity there must have been a clear, mutual understanding, and a positive assent on both sides as to the terms of the con-

tract; i. e., there must be a complete contract, finally concluded and agreed upon.

**Contracts — offer and acceptance — acceptance must be unconditional.**

2. Before an acceptance of an offer becomes a binding contract, the acceptance must be unconditional, and must accept the offer without modification or the imposition of new terms.

Opinion filed March 10, 1920.

From a judgment of the District Court of Renville County, *Leighton,* J., plaintiff appeals.

Affirmed.

*Ben E. Combs,* for plaintiff.

The maxim, "that is certain which can be made certain," when applied to the contract in question, renders the description sufficiently certain. Schuyler v. Wheelon, 17 N. D. 161, 115 N. W. 259; Inglis v. Fohey, 116 N. W. 857.

The contract as between the plaintiff and defendant in the case at bar was plain and clear. Boehm v. Long, 172 N. W. 862.

*McGee & Goss,* for defendant.

The law is, if a proposition is made by a letter it must be accepted unconditionally in order to make a contract. Harriman, Contr. §§ 156, 323; Flashier v. Flatyer, 134 N. W. 556; Egger v. Nesbitt, 122 Mo. 667, 43 Am. St. Rep. 596; Northwestern Iron Co. v. Meade, 21 Wis. 474; Sawyer v. Brossart (Iowa) 25 N. W. 876; Baker v. Holt, 56 Wis. 100, 14 N. W. 8; Cram v. Long, 154 Wis. 14, 142 N. W. 267; Langlellier v. Schaeffer (Minn.) 31 N. W. 690; Lanz v. McLoughlin, 14 Minn. 88; Cram v. Long, 154 Wis. 13, 142 N. W. 267; Kull v. Wilson, 162 N. W. 1072; Knox v. McMurray, 140 N. W. 652; Beiseker v. Amberson (N. D.) 116 N. W. 94.

CHRISTIANSON, Ch. J. Plaintiff brought this action to enforce the specific performance of an alleged contract for the sale of real property. Upon a trial to the court without a jury, judgment went against the plaintiff, and he has appealed to, and demanded a trial de novo in, this court.

On February 14, 1919, defendant wrote plaintiff as follows:

Superior, Wisconsin.   February 14th, 1919.

Adolf Pollak,
   Donnybrook, North Dakota.
Dear Sir:—
   It seems to me that farm of mine near you is worth Thirty-six
Hundred Dollars.   I will sell it for that price if taken within the next
twenty days.   I want at least half cash, and balance secured by mort-
gage on the land drawing eight per cent interest, due on or before two
years.   How does that proposition hit you?

Yours truly,
D. E. Roberts.

Plaintiff replied:

February 21st, 1919.

Mr. D. E. Roberts,
   Superior, Wisconsin.
Dear Sir:—
   Regarding yours of February 14th, will say your offer has been
accepted.   I have deposited for you $1,800 in the Carpio State Bank,
Carpio, North Dakota.   I therefore challenge you to furnish an
abstract, clear title and deed.   You perhaps have received a notice from
that bank.

Yours for a deal,
Adolf Pollak.
Donnybrook, North Dakota, Route 3.

Later plaintiff wrote as follows:

2/27/1919.

Mr. D. E. Roberts,
   Superior, Wisconsin.
Dear Sir:—
   Regarding my last letter must draw your attention to the fact that
I deposited $1,800 for you at the Carpio State Bank, which was a
mistake.   I deposited the money, $1,800 at the First National Bank
at Carpio, North Dakota.

Yours respectfully,
Adolf Pollak,
Donnybrook, North Dakota, Route 3.

On February 20, 1919, the following letter was sent to the defendant by the First National Bank of Carpio:—

Carpio, North Dakota, February 20th, 1919.

D. E. Roberts,

Superior, Wisconsin.

Dear Sir:—

I have before me your letter of the 14th to Adolf Pollak of Donnybrook, in which you state that you will sell him your farm, the Northeast Quarter of Section 9–158–86, Renville county, for $3,600, half cash and balance secured by mortgage on the land, on or before two years at eight per cent interest. Mr. Pollak accepts this offer and has deposited the $1,800 here to be sent to you when you furnish him with warranty deed, together with abstract of title, etc. He will execute mortgage for balance according to your terms stated in your letter. If you will prepare papers and forward to this bank we will proceed to close the deal as soon as papers are satisfactory to Mr. Pollak.

Yours truly,

Oscar Herum, Cashier.

On March 1, 1919, defendant wrote plaintiff:

Superior, Wisconsin, March 1st, 1919.

Adolf Pollak,

Donnybrook, North Dakota.

Dear Sir:—

I have yours of the 27th of February and a letter from the bank at Carpio saying you had there deposited $1,800. I have sent the abstract to be continued. As soon as I get it I will send it to the bank for you and your advisers to examine to see if you are satisfied with my title. It may be a week before it will get there.

Yours truly,

D. E. Roberts.

On March 10, 1919, the First National Bank of Carpio wrote defendant:

Carpio, No. Dak. March 10, 1919.

Mr. D. E. Roberts,

Superior, Wis.

Dear Sir:—

Under date of Feby. 20th, I wrote you that Mr. Adolf Pollak had deposited funds here for a land deal he had on with you for the N.E.¼ sec. 9–158–86 and asked you to forward deed and abstract together with mortgage and notes for the balance of the purchase price, according to your offer made to Mr. Pollak.

To date, I have not heard from you. Kindly get the papers ready and send us so the deal can be closed.

Yours truly,

Oscar Herum, Cashier.

On March 26th, 1919, defendant wrote plaintiff as follows:

Superior, Wisconsin, March 26th, 1919.

Mr. Adolf Pollak,

Donnybrook, North Dakota.

Dear Sir:—

In regard to that land of mine near your place that you want to buy, I have to say that I recently had the abstract brought down to date and the title is all right except a big mortgage on the land not yet due. The owner of the mortgage refuses to discharge the same at this time and for that reason I cannot transfer good title. I will not undertake to do so and for that reason the deal is off. I am sending a copy of this letter to the First National Bank at Carpio.

Yours truly,

D. E. Roberts.

This constitutes the entire correspondence between the parties, and the question is whether it evidences such contract between the parties as entitles the plaintiff to specific performance.

As it is elementary that there can be no contract unless the minds of the parties have met and mutually agreed, it necessarily follows that there can be no specific performance where this requisite is lacking. In order to be enforceable in equity there must have been a clear, mutual understanding and a positive assent on both sides as to the terms of the contract; there must be a complete contract, finally concluded and agreed upon. 36 Cyc. 543, 26 Am. & Eng. Enc. Law, 21. An offer must be accepted in the terms and form submitted or there is no valid

assent, such as will create a contract which may be specifically enforced. 26 Am. & Eng. Enc. Law, 21. As was said by this court in Beiseker v. Amberson, 17 N. D. 215, 218, 116 N. W. 94: "It is an elementary principle in the law of contracts that an unqualified acceptance by letter in answer to an offer submitted by letter creates a binding contract in writing. It is also equally well established that any counter proposition or any deviation from the terms of the offer contained in the acceptance is deemed to be in effect a rejection, and not binding as an acceptance on the person making the offer, and no contract is made by such qualified acceptance alone. In other words, the minds of the parties must meet as to all the terms of the offer and of the acceptance before a valid contract is entered into. It is not enough that there is a concurrence of minds of the price of the real estate offered to be sold. If the purchaser adds anything in his acceptance not contained in the offer, then there is no contract. In this case there was an unqualified acceptance of the offer so far as the price is concerned. After that the acceptance advances terms by the writer as to the carrying out and execution of the contract that were in no manner contained in the offer. Among the new terms imposed by the plaintiff was the one asking the defendant to send the deed to one of two banks named in the letter. The defendant was entitled as a matter of law to have the cash price paid to him at Snohomish, Washington, where the offer was made; and without his consent he was not compelled to send the deed to any place or bank until the price was paid. If plaintiff had accepted the offer unconditionally, his right to a deed could have been made effectual only by a tender of the price to the defendant personally; and, by requiring defendant to send the deed elsewhere, a condition was attached to the acceptance which the defendant was not under any legal obligation to comply with."

In Kvale v. Keane, 39 N. D. 560, 9 A.L.R. 972, 168 N. W. 75, this court said: "It is also a well-settled principle of law that in thus construing such letters to constitute a contract there must be no deviation from the terms of the offer. The letter of acceptance must contain no new or different proposition, which would, to any degree, change the terms of the offer. When an offer is made as above stated, the acceptance must contain no conditions which add to the terms of the offer."

In Ness v. Larson, 41 N. D. 211, 170 N. W. 623, this court held

that where the owner offered to sell land, and the proposed purchaser wrote a letter accepting the offer but made the 'acceptance "unconditional upon owner's furnishing or paying for an abstract of title, which was a new condition not referred to in their former correspondence," such letter "was a counter offer and not an acceptance." The principle announced in the foregoing cases was applied, and such cases cited with approval, in Carns v. Puffet, 44 N. D. 438, 176 N. W. 93.

It seems clear that under these rules the letter written by the plaintiff on February 21st did not constitute an acceptance of the offer contained in defendant's letter of February 14th. It will be noted that in the letter of February 21st plaintiff attaches the condition that defendant must send the deed and abstract to the bank at Carpio. The letter written by the bank to the defendant in terms so states. This, of course, the defendant was under no obligation to do. Under his offer he was not obliged to furnish an abstract nor was he required to send the deed to Carpio. He was entitled to payment to him of the cash stipulated and delivery of notes and mortgage at Superior, Wisconsin.

Plaintiff, however, contends that by virtue of the deposit in the First National Bank of Carpio, he has paid the defendant $1,800, that such moneys belong to the defendant Roberts, and that the plaintiff has no claim thereon whatever. This contention is contrary to the averments of the complaint, and the proofs. In the complaint it is averred that the "plaintiff had deposited the sum of eighteen hundred and no/100 ($1,800) dollars in the First National Bank of Carpio, North Dakota, subject to the order of defendant, upon the furnishing of deed and abstract of title by defendant." Upon the trial the plaintiff and the cashier of the First National Bank of Carpio testified regarding said deposit, and the plaintiff introduced in evidence a receipt which he took from the bank at the time he paid over the money. The receipt reads as follows:

"Carpio, No. Dak., Feby. 20, 1919.

"Received of Adolph Pollock, $1,800, to be paid to D. E. Roberts when said Roberts furnishes deed and abstract to N.E.$\frac{1}{4}$–9–158–86.

"First National Bank, Carpio, N. D.

"By Oscar Herum, Cashier."

The cashier testified: "(Pollock) made this deposit of $1,800 and I was to hold that until Mr. Roberts sent us the deed and the abstract, and the second mortgage that Mr. Pollock was to execute for the balance of the purchase price—not the second mortgage but a mortgage." He further testified that he was to hold the money until the conditions he had enumerated were performed and that until they were performed he was not to pay the money. Clearly the plaintiff did not intend, nor did the defendant have any reason to believe that plaintiff intended, the deposit to belong to the defendant. The money belonged to the plaintiff, and he could doubtless have withdrawn it at any time he saw fit to do so. He had merely placed the money in the bank with instructions to pay it over to Roberts upon Roberts' furnishing an abstract and delivering a warranty deed,—"papers satisfactory to Mr. Pollock." In the letter of March 1st, (which it is contended is an acceptance of the counter offer), defendant apparently recognized that the money did not belong to him. He recognized that the deal was not closed,—and that it might not be closed. He said: "I have sent the abstract to be continued. As soon as I get it I will send it to the bank for you and your advisers to examine *to see if you are satisfied with my title.*" Nowhere did the defendant say that when the time came to close the deal he would send the deed to the bank at Carpio, or that he would waive his right to have the money paid to him at Superior, Wisconsin. We believe that the trial court was right in holding that these letters do not evidence a complete contract, finally concluded and agreed upon by the parties.

But even if there was a contract it does not follow that it will be specifically enforced. "The jurisdiction of a court of equity to decree the specific performance of contracts is not a matter of right in the parties to be demanded *ex debito justitiæ,* but applications invoking this power of the court are addressed to its sound and reasonable discretion, and are granted or rejected according to the circumstances of each case. Specific performance is frequently refused, although the defense is not such as would warrant rescission of the contract at the suit of the defendant." 36 Cyc. 548.

Judgment affirmed.

ROBINSON and GRACE, JJ., concur.

BIRDZELL, J. (dissenting). I dissent. In my opinion there exists an enforceable contract for the sale of the land in question. Conceding all that is said in the majority opinion with reference to the qualified acceptance or counter-proposal of the plaintiff, it seems to me that the defendant's letter of March 1st constitutes an expression of assent to such modifications as were made by the plaintiff. At the time defendant's letter was written, it appears that he had before him both the plaintiff's purported acceptance and the letter from the bank stating the conditions attached to the deposit. He made no objection to these conditions, but, on the contrary, indicated that he would proceed with performance in the manner suggested. As I construe this letter, it served to complete a mutual contract for the sale of the land.

BRONSON, J. I concur.