[File No. 6144.]

L. R. BAIRD, as Receiver of the Farmers & Merchants State Bank of Granville, North Dakota, Respondent, v. NELLIE B. ELLIOTT and M. J. Mullins, Administrators of the Estate of George D. Elliott, Deceased, Appellants.

(249 N. W. 894.)

Opinion filed August 10, 1933.

*Albert Weber*, for appellants.
*B. A. Dickinson*, for respondent.

BURR, J.   Plaintiff seeks to foreclose a chattel mortgage given to secure the payment of a note for $800 made by George D. Elliott to him on June 17, 1929, due October 15, 1929.   Elliott died December, 1930, and defendants are administrators of his estate.

In 1924 the Farmers & Merchants State Bank of Granville became insolvent.   The plaintiff was appointed receiver and has been receiver ever since.   Among the assets of this bank was a mortgage on certain real estate on which, and as a part thereof, was "a big livery barn," and in 1926 G. R. Van Sickle obtained title to the real estate through tax deed, quitclaiming to the receiver in 1928.

Plaintiff claims that at the time of the giving of the note there were negotiations between George D. Elliott and G. R. Van Sickle for the sale of this barn.   No contract, note or memorandum of agreement in writing was executed by anyone.   The entire transaction was oral, except that this note and mortgage were given for the purchase price.

The testimony shows that Van Sickle represented the receiver as manager in district No. 2; he had no written authority from Mr. Baird, defining his powers but the accounts receivable were turned over to him; Elliott was not indebted to the bank, but wanted to buy the barn and the note and mortgage were given for the purchase price.   Van Sickle was to pay the taxes on lot and barn for the year 1925 and Elliott the

subsequent taxes. Elliott was to get the barn, taking his own chances with the county commissioners as to taxes on the entire property and take it as personal property "but he did not want the lot and said so;" that Elliott "would wreck the building and take it away from Granville." Van Sickle paid the taxes for 1925; Elliott "assumed charge of the building," left it on the lot unsevered, rented it thus to one Beecher for a period of from "six to eight months in the winter time," with instruction to pay the rentals to Van Sickle, and instructed Van Sickle to insure the building "at once and to first pay the insurance premium out of the rentals when and as received and when the insurance was paid to apply any balance toward the payment of his note;" the building was insured; that the only payments on the note are two payments by the insurance company, on losses, one payment for some lumber from a lean-to on the building sold by Elliott in 1930 and "taken out to the Hamilton farm" and "the proceeds of some rentals collected." Plaintiff says he received the payments in fulfillment of the contract; but the fact remains that Elliott received nothing unless he got title to the barn—not even any proceeds of the insurance policy.

There is testimony of Mr. Elliott's brother-in-law to the effect that in November, 1930, Elliott told him he was going to wreck the barn and it was at that time the "lean-to" was detached and the lumber sold to Hamilton.

While there is some testimony indicating that Elliott bought the barn intending to wreck it, there is no evidence that Elliott was compelled to do so, nor required to remove the barn from the premises. In fact, the whole tenor of the transaction would indicate that it was merely a matter of option on the part of Elliott what he would do with it. Van Sickle testified Elliott "assumed charge of the building" and rented it, instructing to pay rentals to Van Sickle who was to insure. It was clear he was not to remove or wreck it immediately because upon the completion of the deal he had it insured and Van Sickle drew, or caused to be drawn, papers to the effect that Elliott rented the building to those already in possession of it as tenants under Van Sickle and written notice was given to this tenant to continue paying the rent to Van Sickle. This lease was for six or eight months, and there was no change of tenants. The notice was drafted by Van Sickle and sent out from his office. Not only this but some five months thereafter, when

the lean-to was detached and the lumber sold to Hamilton, the transaction was made through Van Sickle's office. Hamilton was a tenant on a farm leased to him by Van Sickle. He needed lumber and through the suggestion of Van Sickle he got this particular lumber. This was the only "wrecking" Elliott did or ever authorized. The proceeds went to Van Sickle. True, they were endorsed upon this note as was the rental received from Beecher.

Mrs. Elliott testifies that after her husband's death she learned through a collector employed by Van Sickle that Van Sickle claimed this barn was part of the estate; she had not known it before. This is given in explanation of a letter to the plaintiff in which she said her husband had bought this particular barn and to a letter to Mr. Van Sickle relative to the claim for loss against the insurance company; and to a letter written prior to the death of her husband regarding the rent of a barn in Granville.

In 1931 Mrs. Elliott bought the lot and the barn from the county, receiving a deed therefor. She wrecked the barn, sold the lumber therefrom to one Sven for $450.00, and then sold the lot to one Mock of Granville. Her undisputed testimony is that the money paid to the county was her own money received from an insurance policy on the life of Mr. Elliott and payable to her.

At the time the note was given the barn involved was real estate. Under the provisions of § 5963 "No agreement for the sale of real property, or of an interest therein, is valid unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged, or his agent thereunto authorized in writing. . .. ." Neither the plaintiff nor the decedent signed any written agreement, note or memorandum. Neither did Van Sickle, and in addition Van Sickle admits that he had no written authority from plaintiff. There was no agreement on the part of Baird—even assuming there is proof that Van Sickle was authorized to act for him—to sever the barn from the land and deliver the barn to Elliott, or to sell him the material in the barn. Plaintiff was the owner. He made no agreement. Van Sickle, according to his own testimony, was a mere agent. It is true, as pointed out in Merritt v. Adams County Land & Invest. Co. 29 N. D. 496, 151 N. W. 11, cited by respondent, the party seeking to purchase land under such a contract may do so even if he did not give

written authority to his agent to sign his name where the seller has signed the contract; but here neither the seller nor anyone else signed the contract.

The record is entirely silent as to action by the plaintiff, other than the mere fact he brought the suit to foreclose the chattel mortgage. The plaintiff, as receiver, succeeded to the interest of the bank. At the time of the negotiations with Elliott, Van Sickle had executed a quit-claim deed to plaintiff, which was not recorded; but there is no evidence whatever showing that plaintiff ever authorized any transaction with Elliott, that he ever knew of any such transaction, or approved of it, or knew a tax deed had been secured and a quitclaim deed given to him or ever authorized Van Sickle to make any contract with any-one regarding the barn or the lot. Certainly there is no note, or memorandum in any way binding the plaintiff. Even if the bringing of the action may be said to be a ratification of the whole transaction it must be remembered that this ratification took place long after Elliott was dead.

It is the claim of the plaintiff that the transaction with Elliott must be viewed as a transfer of personal property; that the parties considered it personal property and so treated it. In support of this contention he relies upon the decision of this court in Russell v. Meyer, 7 N. D. 335, 342, 75 N. W. 262, 47 L.R.A. 637. It is true that in the case cited this court said: "It was competent for the owner of the land to sever the building therefrom (considering the mode of its annexation thereto) by a sale thereof separate from the land. Such a sale would pass title to the building as personal property." That statement must be viewed in the light of the facts of the case. The facts are not set forth and we do not know just what were the terms and conditions of the contract of sale. However, analysis of the cases cited by this court in support of the proposition set forth in the quotation shows that the principle enunciated is not intended to be universal and does not cover all situations. This court, in Kittelson v. Collette, 61 N. D. 768, 240 N. W. 920, was required to consider a case where a house had been sold separate from a lot, as part payment on a car, and we set forth quite fully (p. 771 of 61 N. D.) in and under what circumstances the house could be treated as personal property and the subsequent purchaser of the lot might not become the owner of the building. In this

case cited it was clear that the owner of the lot, when he purchased the lot, knew the house had been sold to another party and he did not pretend his contract was for the house or that he supposed he bought the house. Kittelson attempted to ignore the deal after Collette had fully performed. The latter signed a memorandum showing the house had been sold to Kittelson, paid the remainder of the purchase price and took his car. We expressly set forth that the subsequent grantee "had notice that theretofore the house had been sold as personal property to the plaintiff." The question of the statute of frauds was not raised nor was it involved. These questions are not applicable to the facts here. In the Kittelson Case the house was to be removed by the purchaser; but the owner of the house had signed a memorandum of agreement showing the house was sold to the plaintiff. We are not concerned with whether in that case the memorandum was sufficient to prove a sale of real estate if proper objections had been raised. No objections were raised, the memorandum was treated as sufficient, Kittelson did not claim the statute of frauds remained unsatisfied, and the case turned upon actual notice to subsequent purchasers. Such matter is not involved in the case at bar.

It is true that a building may be treated by the owner as personal property, and as pointed out in 1 Williston on Contracts, 1006, "Agreements are not infrequently made for the sale of buildings or of the materials in standing buildings." As to whether this sale constituted a sale of personal property or a sale of real property depends upon the particular facts and the terms of the agreement.

In Hutchins v. Masterson, 46 Tex. 555, 26 Am. Rep. 286, the court says, where "the mill is annexed to and part of the land a parol sale of it, even by the owner of the land, would be void, because in conflict with the statute of frauds."

One may tear down a building and deliver the lumber and other material, or sever the building and sell it in its entirety and thus sell personal property, or an owner may permit a building to be placed on his land, agree that it is not to be affixed, and permit the owner to come upon the premises and remove the building. See Clements v. Morton, 200 Ala. 390, 76 So. 306; (where a house was erected on land of another with the understanding it was to be the property of the one building it). Rogers v. Cox, 96 Ind. 157, 49 Am. Rep. 152 (where it is

said there was no proof that the building was ever annexed to the land). Brown v. Roland, 11 Tex. Civ. App. 648, 33 S. W. 273.

But where the parties, by their agreement, attempt to make a present transfer of the building it is clear they are attempting to make a sale of real property "even though it is also agreed that the subject matter of the sale shall be severed within a short time." See Meyers v. Schemp, 67 Ill. 470. In this case a brick building had been damaged by fire and was auctioned by the owner to the highest bidder. Apparently some of the brick had fallen from the building because of the fire. As to these, the court said they were "personalty but the main part of it remained as it was, when used as a public house—realty." The court held that the contract for purchase, being verbal, was barred by the statute of frauds because it was for a sale of realty though the payment was to be made from the proceeds of the brick taken from the building when razed. In Kingsley v. Holbrook, 45 N. H. 313, 86 Am. Dec. 173, it was held that a contract for the sale of growing trees, with permission to enter upon the premises and cut the timber, and later extending the time for entrance was in fact a contract for the sale of an interest in lands and to be valid must conform to the statute of frauds. Also see, 1 Williston, Contr. 1006. The rule is stated in 27 C. J. 195, as follows: "A contract for the sale of improvements and buildings permanently affixed to the realty is a contract for the sale of real property and within the statute of frauds."

See Rosenstein v. Gottfried, 145 Minn. 243, 176 N. W. 844, where the court says: "An agreement for a sale of a two-story frame building, built on a permanent stone foundation, to be wrecked and removed by the buyer, but not immediately, and which gives the buyer a present interest in the building and the material composing it, is a sale of an 'interest in land,' and, under our statute of frauds, it is required to be evidenced by writing."

In Hutchins v. Masterson, 46 Tex. 555, 26 Am. Rep. 286, a case involving the right to a gin mill said to have been purchased from the owner of the land, and left and operated on the land by the purchaser, the court says: Where "the mill is annexed to and part of the land, a parol sale of it, even by the owner of the land, would be void, because in conflict with the statute of frauds."

This does not conflict with the rule that parties may, under certain circumstances, consider buildings as personal property.

The undisputed evidence in this case shows the barn annexed to and part of the real estate, that whatever agreement was made was for a present transfer of the building as an entirety and was therefore a sale of real property.

Respondent says the case of Rogers v. Cox, 96 Ind. 157, 49 Am. Rep. 152, is of importance because therein the court says with reference to the building involved therein "for aught that appears, (it) may not have been permanently annexed to the freehold. The fair inference is that it was not so annexed because it was sold as personalty, and the license granted to remove it. The clear implication therefore is, that it belonged to that class of buildings such as sawmills, and the like, which are easily susceptible of severance from the land on which they stand." But the comment by the Indiana court is practically decisive of this case. The court had said: "We need not decide what would be the rule in a case where it was made to appear that the structure was permanently annexed to the land." Then the court proceeds to show that all the indications of the case were to the effect that the building was not permanently annexed. The court makes a distinction between a building not permanently annexed and one that is, and then says: "All we are required to decide upon this branch of the case is, that where the building is not a permanent one, and is not annexed to the freehold, and is sold with the right of removal, the contract, although verbal, will justify the purchaser, if he has fully complied with his contract in entering and removing the building."

By the very terms of the case the court is not deciding anything which is of value to us because there is no question raised by the plaintiff at any time that the building involved here was not permanently annexed to the land. It is true in his brief to this court the respondent says there is no proof as to the "method of attachment of the old livery barn to the lot;" but Van Sickle himself testified the barn was "located on the lot" and that it had been built upon that lot "ever since I can remember the lot." All through the trial the appellants raised the question that the building was attached to the lot, was a part of the real estate, and that the sale was therefore a sale of real estate. Paraphrasing the Indiana court we would say: "The fair inference is that it

was" annexed. Nowhere in his memorandum opinion does the trial court even suggest the building was not annexed to the land.

In this case we need not inquire whether it becomes important to determine whether the severance of the building from the lot must be done by the vendor in order to make it personal property, or whether a severance may be made by the purchaser to constitute that building personal property. The fact remains that there was no specific contract for severance. It was true the deal contemplated that at some time in the future, whenever it suited Elliott, he could wreck the building and dispose of the lumber or could remove the building, and that this is what he had in mind when he made the deal; but he was not bound to do so and so far as the record shows he could have kept the building on the lot indefinitely and treated the whole parcel as his own, paying the taxes on the lot and barn and collecting the rentals.

The sole consideration for the note and mortgage was the result of this alleged contract. Our statute already quoted shows such contracts are invalid. In Fried v. Lonski, 48 N. D. 1023, 188 N. W. 582, this court points out the difference between the effect of the statute of frauds upon a contract for sale of personalty and upon a contract for the sale of real estate. The later contract is void if not made in accordance with the statute. The question of the validity of the contract, and that it "was a transaction for the sale of real estate—contrary to the provisions of § 5963—called the Statute of Frauds," were raised by the defendants by proper objections, at the proper time and at the close of the entire case.

It is the claim of the plaintiff that the transaction was so far completed as to take it out of the statute of frauds. This claim cannot be maintained. There is no claim that Elliott bought the lot from either Van Sickle or the plaintiff. At the very best it is a claim that Elliott bought a portion of the real estate. The conversion into personal property would not satisfy the statute of frauds. The barn remained real estate.

Whether there are sufficient facts to establish a claim against the estate of the decedent on other grounds, or a claim against Mrs. Elliott personally are not involved here. The plaintiff brings action to foreclose a chattel mortgage securing a note founded upon a void contract. If there were consideration for the note it failed and failing for the

note it failed for the chattel mortgage sought to be foreclosed. The judgment of the lower court is reversed and the action dismissed.

NUESSLE, Ch. J., and CHRISTIANSON, BIRDZELL and BURKE, JJ., concur.