Eveline SYRUP, Percy Syrup, Alverna Ecklund, Alice Best, Harold Syrup, and Lloyd Syrup, as Administrator of the Estate of William Henry Syrup, deceased, Appellants,

v.

Stanley PITCHER, Respondent.

No. 7431.

Supreme Court of North Dakota.

Oct. 10, 1955.

Rehearing Denied Dec. 5, 1955.

W. T. DePuy, Grafton, for appellants.

Robert H. Lundberg and F. E. McCurdy, Bismarck, for respondent.

MORRIS, Judge.

This case originated in a proceeding in the Matter of the Estate of William Syrup, deceased, wherein Stanley Pitcher filed in the County Court of Pembina County a petition for the conveyance of real estate sold by the decedent during his lifetime. In this petition it is alleged that prior to June 26, 1951, oral negotiations had been entered into between the decedent and the petitioner relative to the sale of certain land in Pembina County described as the East Half of the Southeast Quarter of Section 16, Township 162, Range 56. The petitioner also alleged that on June 26, 1951, he paid in full for the land and the decedent gave him possession thereof. He alleged the purchase price to be $1,600, which was paid to an escrow agent, and declared that there has been sufficient performance of the oral contract to take it out of the statute of frauds. He then prayed for an order and decree of the county court directing Lloyd Syrup as administrator of the estate to convey title to the petitioner and receive the purchase price in accordance with the oral contract.

A hearing was had on the petition which resulted in an order of the county court directing Lloyd Syrup as administrator of the estate of William H. Syrup, deceased, to convey to Stanley Pitcher by good and sufficient administrator's deed, free of encumbrance, the real property above described and to receive the purchase price in the sum of $1,600. From this order the administrator appealed to the District Court of Pembina County. The appeal was taken upon all questions of law and fact and a new trial in the district court was demanded. The notice of appeal also set forth these specific assignments of error:

"1. That the County Court erred in finding there was a Contract made between the decedent and the said Stanley Pitcher for the sale and purchase of the premises described in said purported Order.

"2. That the County Court erred in finding that the said Stanley Pitcher partly performed said claim Contract for the purchase by him of the premises described in said purported Order.

"3. That the County Court erred in decreeing specific performance of a void Contract.

"4. That said purported Order for the conveyance of the real estate therein described is not in conformity with the provisions of the statutes relating

to specific performance of the alleged contract for the purchase of real estate and is null and void."

Before the case came to trial in the district court there appears to have arisen at least a doubt in the minds of the district court and the attorneys representing the parties as to the power of the county court to decree specific performance of an oral contract for the sale of land. See Section 30–1311, NDRC 1943; Fox v. Fox, 57 N.D. 368, 221 N.W. 889. By agreement of the parties the case was tried de novo in the district court as an action in specific performance as though the case had originated in that court.

The trial court made findings which recited that during the month of June 1951, Stanley Pitcher and William Henry Syrup made an oral agreement for the purchase and sale of the eighty acres of land herein involved for an agreed price of $1600, to be paid upon delivery of merchantable title; that shortly thereafter the parties, together with others, went to the office of Ross McIntosh, an attorney, and arranged with him to handle the details of the transfer and left with him the purchase money which the attorney was to use to pay the balance on a contract by which Syrup had purchased this and other lands and to otherwise attend to the details of the sale and transfer. William Henry Syrup met accidental death on July 27, 1951. The court further found that shortly after the oral agreement had been made Stanley Pitcher went into possession and proceeded to make certain improvements on the land by grubbing trees and brush and breaking and tilling and that the possession was taken with the knowledge and consent of William Henry Syrup and that the purchase price of $1,600 is fair and adequate.

Pursuant to the court's findings of fact and conclusions of law an equivocal judgment was entered decreeing specific performance against the appellants and Lloyd Syrup as administrator requiring them

"as the situation may require to perform a certain contract wherein and whereby William Henry Syrup, de-ceased, agreed to sell to Stanley Pitcher and Stanley Pitcher agreed to buy from said William Henry Syrup certain lands situated in the County of Pembina and State of North Dakota,  *  *  *"

for an agreed price of $1,600, payable upon delivery of merchantable title. The judgment further provided:

"that the Court retain jurisdiction in order to do equity between the parties and to make any supplemental orders or decrees that may be necessary including reservation of the right to amend this decree as to matters of costs or damages as equity may require."

The administrator and the other heirs of William Henry Syrup appeal from the judgment and demand a trial anew in the supreme court.

No new pleadings were filed in the district court. The case appears to have been tried in that court on the petition of Stanley Pitcher in the county court for specific performance and the specifications contained in the notice of appeal to the district court.

We have two statutes bearing upon the issues, the pertinent parts of which are as follows:

Section 9–0604, NDRC 1943: "The following contracts are invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by his agent:  *  *  *

"4. An agreement for the leasing for a longer period than one year, or for the sale, of real property, or of an interest therein. Such agreement, if made by an agent of the party sought to be charged, is invalid unless the authority of the agent is in writing subscribed by the party sought to be charged."

Section 47–1001, NDRC 1943: "An estate in real property, other than an estate at will or for a term not exceed-

ing one year, can be transferred only by operation of law or by an instrument in writing, subscribed by the party disposing of the same or by his agent thereunto authorized by writing. This does not abridge the power of any court to compel the specific performance of any agreement for the sale of *real property* in case of part performance thereof."

■ Under the provisions of Section 9–0604, supra, certain oral contracts are declared to be invalid. This means that they are wholly void. Brey v. Tvedt, 74 N. D. 192, 21 N.W.2d 49; Baird v. Elliott, 63 N.D. 738, 249 N.W. 894, 91 A.L.R. 1274; Fried v. .Lonski, 48 N.D. 1023, 188 N.W. 582; Weber v. Bader, 42 N.D. 142, 172 N. W. 72. South Dakota has given the same construction to a similar statute. Reedy v. Ebsen, 60 S.D. 1, 242 N.W. 592.

■■ Stanley Pitcher has assumed the position of plaintiff in this proceeding and has sought the intervention of equity to afford him relief which he would *not* otherwise be able to obtain because of the statute of frauds. One who seeks to have a contract specifically performed has the burden of proof. Before the court can afford him relief the terms of the contract upon which he relies, which are essential and material to a decree to specific performance, must be shown to be clear and definite. 49 Am.Jur., Specific Performance, Section 22; 81 C.J.S., Specific Performance, § 35. Where the plaintiff seeks to avoid the impact of the statute of frauds because of partial performance, "The contract must possess all the elements and features necessary to the specific enforcement of any agreement, except the written memorandum required by the statute." Pomeroy's Equity Jurisprudence, 5th Ed., Section 1409.

"The contract must be fully made and completed in every respect except for the writing required by the statute, in order to be enforceable on the ground of part performance." 49 Am. Jur., Statute of Frauds, Section 423.

These rules require us to first consider the evidence with respect to the oral contract under which Stanley Pitcher asks the court to compel the representatives of the William Syrup estate to deed the land in controversy in order to determine whether, aside from the statute of frauds, a specifically enforceable contract has been shown.

On June 1, 1951, William Syrup was the purchaser under a contract with the State Land Department of the State of North Dakota of the Southeast Quarter of Section 16, Township 162, Range 56, Pembina County. On that date in order to get a patent to this land the purchaser would have had to have paid to the land department $1,542.35. During the month of June some negotiations were had between William Syrup, Stanley Pitcher, and A. C. McCurdy concerning the purchase by Pitcher of the East Half of the quarter section covered by the state land contract. At that time the land in controversy was in the possession of Stanley Pitcher's father who was using it as a pasture under an agreement whereby the Syrups used, in exchange, a tract of land belonging to the elder Pitcher.

On June 26, 1951, William Syrup, Stanley Pitcher, and A. C. McCurdy appeared at the office of Mr. Ross McIntosh, an attorney. Mr. McIntosh was McCurdy's attorney. He never represented Syrup at any time. McCurdy and his attorney were witnesses for Stanley Pitcher.

McCurdy testified that he asked McIntosh to take charge of the legal matters connected with the transfer of the land; that Stanley Pitcher was getting the land; and that McCurdy was furnishing money in the sum of $1,600 in full payment. McCurdy made out a check payable to Mr. McIntosh in the sum of $1,600. At some subsequent time and at the direction of Mr. McCurdy, Mr. McIntosh wrote on one corner of the check "For purchase price E½ SE¼ 16–162–56 Pembina Co. N Dak." Syrup agreed to return later with his wife and execute a deed. Syrup never returned and a month later was accidentally killed. No deed was ever prepared. According

to the testimony of Mr. McIntosh, McCurdy was to initially get the land. The deed was to be taken in McCurdy's name for his protection. Pitcher was to have the land. It does not appear from whom he was to get title or by what type of contract or conveyance.

■ On June 27, 1951, Mr. McIntosh wrote to the state land department advising that William Syrup desired to pay off the land contract and stating:

"I have sufficient money in my hands to pay the amount due on the contract, but it is contingent on Mr. Syrup giving good title to eighty acres of the land to a purchaser."

He asked the land department to forward a deed and instructions. The land department replied on June 28, refusing to send the deed and stating that the money must be in the hands of the department before a deed would be sent out. On July 26, 1951, the day before Syrup's death, McIntosh addressed a letter to him as follows:

"If you and your wife will come in I will fix up a deed to Bert McCurdy and then I will send the money in to the State Land department and secure a deed to you from them."

This letter was received by the Syrup family after William Syrup's death. Mrs. Syrup testified that she did not want to sell the land and would not sign a deed to it.

In 65 A.L.R. on page 102 we find an annotation which says:

"Courts of law will grant relief in damages for the breach of many agreements which would not be regarded in equity as sufficiently definite and certain to warrant a decree for their specific performance. In this respect a greater degree of certainty is required in the terms of a contract which is to be specifically enforced in equity than is necessary in one which is to be the basis of an action at law for damages, since an action at law is founded on mere nonperformance by the defendant, and this negative act may often be established without determining all the terms of the contract with exactness. On the other hand, a suit in equity is wholly an affirmative proceeding, its object being to procure a performance by the defendant specifically, and this requires a clear and precise understanding of the terms of the contract, for they must be clear and definite before the performance thereof can be decreed."

A great many cases are cited under this annotation, including Beebe v. Hanson, 40 N.D. 559, 169 N.W. 31, and Paul v. Leutz, 48 N.D. 1121, 188 N.W. 1022.

"In order to be enforceable in equity there must have been a clear, mutual understanding, and a positive assent on both sides as to the terms of the contract; i. e., there must be a complete contract, finally concluded and agreed upon." Pollak v. Roberts, 45 N.D. 150, 176 N.W. 957, 958.

In this case the contract is oral. But that fact does not excuse uncertainty or ambiguity. In order to entitle the vendee to specific performance the contract must, aside from the statute of frauds, be established with the same certainty that would be required if it had been in writing. The vendee has proceeded and the judgment appealed from was entered on the theory that Stanley Pitcher purchased from William Syrup eighty acres of land, tendered the purchase price, and partly performed the contract to the extent that equity would decree the title to be conveyed to him. The evidence which he produced is ambiguous and uncertain with respect to what the parties agreed to do. The record indicates that there was some preliminary discussion and perhaps a tentative agreement regarding the sale and purchase of the property. According to McCurdy and the attorney in whose office the final conference was had, McCurdy was financing the transaction and title was to be taken by him. He does not appear to have been a party to a contract with Syrup and is not a party to

this action. Any judgment the court might render would have no binding effect on McCurdy. McCurdy produced a check for $1,600 which he turned over to his own attorney. Title to the land was in the State of North Dakota and presumably still is. The attorney still has the money. It is not under the control of the court or anyone over whom the court has jurisdiction in this action. There has been no payment or tender of the purchase price or any part thereof. The judgment that was entered herein is itself indicative of the uncertainty that surrounds the transaction between the parties. In addition to the parts of the judgment already quoted, it provides:

"that said administrator and appellants may use whatever method may most expediently and conveniently accomplish the results in the performance of the aforesaid contract, so long as no rights of the respondent are impaired or delayed; that if the said appellants do not forthwith proceed to the use of such alternative method of performance the County Court of Pembina County is hereby directed to make an order commanding the administrator of the above-named decedent's estate to convey the described lands to the respondent pursuant to his rights as determined herein and to take and receive the aforesaid purchase price into said estate in accordance with law and said administrator shall do what may be needful in connection with such proceedings."

We have reached the conclusion that Stanley Pitcher has failed to establish a contract upon which he is entitled to a decree of specific performance with that degree of certainty which the law of equity requires.

The briefs of both parties have been largely devoted to a discussion of the question of whether or not there has been a sufficient part performance of the alleged oral contract to take the case out of the statute of frauds. Since the facts involved in determining this question may have at least an incidental bearing on the fundamental question of the existence of an oral contract, we deem it proper to discuss Stanley Pitcher's claim of part performance.

He cites Mitchell v. Knudtson Land Co., 19 N.D. 736, 124 N.W. 946, and Heuer v. Heuer, 64 N.D. 497, 253 N.W. 856, 858. In the latter case it is said:

"Where a vendee is placed in possession of land under a contract of sale, makes valuable improvements, and pays part of the purchase price, the fact that the requirements of the statute of frauds were not complied with in making the contract will not defeat an action for the specific performance thereof."

We have already determined that the money in the hands of the attorney for A. C. McCurdy does not constitute a payment of the purchase price or any part thereof. However, we do not believe that part payment of the purchase price is always an indispensable element of part performance of an oral contract. Where a purchaser takes possession under an oral contract for the sale of land with the consent of the vendor and while in such possession makes valuable and lasting improvements on the premises in reliance on the contract, there is a sufficient part performance to take the case out of the statute of frauds, although no part of the purchase price be paid. American Law of Property, Section 11.9; 49 Am.Jur., Statute of Frauds, Section 449. The burden is on the vendee who seeks to invoke this rule to clearly establish that he took possession pursuant to the terms of the contract and that permanent and valuable improvements were made in reliance upon it.

Stanley Pitcher testified that about two weeks after the meeting in Mr. McIntosh's office he started working on the land. The work consisted of clearing off brush and shrubs and breaking. This work continued for about three weeks. In all, about fifteen acres were broken up, about half before and half after the death of Mr.

Syrup. Pitcher does not contend that the oral contract provided when possession should be given. As far as this record shows he entered into possession entirely upon his own initiative. It should also be noted that at the time he entered upon the land his father was in possession as a tenant under an exchange arrangement with Syrup. Syrup was not in possession and as far as this record shows had no right to yield possession until the termination of the tenancy of the elder Pitcher or with his consent. There is no evidence on this point. Stanley Pitcher does contend, however, that the evidence shows that William Syrup knew that he had gone into possession of the land and acquiesced therein. About a week before Syrup's death he went to where Stanley Pitcher was working on the land and stayed for about five minutes. Evidence of that conversation is not available because William Syrup is dead and Stanley Pitcher is not a competent witness under the provisions of Section 31–0103, NDRC 1943. There is testimony by other members of the Pitcher family as to statements made by Syrup indicating that he knew that Stanley was doing some breaking on the land. When all the evidence is considered it is probable that William Syrup knew that Stanley Pitcher had started to work on the premises which had theretofore been in the possession of his father and that Syrup failed to object.

We now turn to the evidence of improvements that resulted from Stanley's labor. At the time of Syrup's death from seven to ten acres had been broken on this eighty acre tract. A similar amount of work was done after Syrup's death. The evidence does not show what happened after that. We do not know how long Stanley Pitcher's possession continued, to whom, if anyone, it was surrendered, or who was in possession of the premises at the time of trial. As far as the evidence shows the land that was broken up was never farmed. There is no evidence of the value of the work performed by Stanley Pitcher or that it resulted in the permanent improvement of the premises or in any way increased the value thereof.

██ In The Henry S. Grinde Corp. v. Klindworth, 77 N.D. 597, 44 N.W.2d 417, 424, we said:

"Improvements made on land, in order to constitute part performance of an oral contract for its sale, have to be valuable, substantial and permanent."

Assuming that William Syrup acquiesced in the possession of Stanley Pitcher, the improvements claimed by the vendee fail to meet this test. The part performance of the vendee was not sufficient to warrant specific performance of an oral contract for the sale of land. The judgment appealed from is reversed.

BURKE, C. J., and SATHRE and JOHNSON, JJ., concur.

GRIMSON, Judge (dissenting).

The district court in the case at bar made the following finding of fact:

"That during the month of June 1951, the respondent, Stanley Pitcher, and one William Henry Syrup, now deceased, made and entered into an oral agreement for the purchase and sale of certain real estate situated in the County of Pembina and State of North Dakota, (describing the same) for an agreed price of $1600.00 to be paid by the buyer to the seller upon delivery of merchantable title. That shortly thereafter the parties, together with others went to the office of one Ross McIntosh, an attorney in the City of Cavalier in the aforesaid county and state, and there arranged with him to handle the details of the transfer and left with said attorney the purchase money, said attorney to use said money to pay the balance of a purchase contract on the land sold (and other lands) and otherwise attend to details of the sale and transfer."

We have repeatedly held that the findings of the trial court are entitled to appreciable weight. Gunsch v. Gunsch, N.D., 67 N.W.2d 311, 326, and cases cited. To

my mind there is sufficient evidence to support that finding.

Stanley Pitcher, the petitioner and respondent in the instant case claims that he made an oral agreement with William Syrup for the purchase of a certain 80 acres of land in Pembina County for $1,600 cash and seeks specific performance of that agreement. The petitioner was handicapped in the presentation of this evidence by the fact that William Syrup died before the contract was completely executed. Petitioner, therefore, could not testify to the conversation actually had between them. Several witnesses, however, testified that Syrup had told them that he had sold his land to Pitcher. While those witnesses were related to Pitcher the credibility was for the district court. Then after that original agreement Stanley Pitcher secured the promise of A. C. McCurdy for a loan to finance the deal. Thereafter William Syrup, Stanley Pitcher and A. C. McCurdy appeared in the office of Ross McIntosh, an attorney at Cavalier. It appears from the testimony that the talk there confirmed this oral agreement already had.

The arrangements made at that conference were for the purpose of carrying out the oral agreement for sale and purchase between Syrup and Pitcher already had. Syrup had a contract with the State Land Department for the purchase of 160 acres of land of which the 80 acres involved were a part. He showed a statement that he owed $1,542.35 on the contract. McCurdy then placed the $1,600 Pitcher was to pay for the 80 acres in trust with Ross McIntosh for the double purpose of paying up Syrup's contract with the state to clear Syrup's title and simultaneously to pay Syrup for the 80 acres thereof that Pitcher had bought from Syrup. That would both clear Syrup's title and pay him off according to the oral agreement. McIntosh was agreed upon to carry that out. He accepted the assignment.

McIntosh testifies on direct examination:

"Q.—Anything further said by Mr. Syrup or Mr. McCurdy in your office at that time? A.—Well, Mr. McCurdy gave me a check for $1600.00.

"Q.—Examining check which is Exhibit 'A,' did you have that in your possession? A.—That was delivered to me by Mr. A. C. McCurdy.

"Q.—At that same time of the transaction with Mr. Syrup? A.—Yes.

*    *    *    *    *    *

"Q.—This was given to you in trust? A.—Yes.

"Q.—Under what conditions was that given to you in trust? A.—I was to clear the land deal up and secure good title to it.

*    *    *    *    *    *

"Q.—Mr. McIntosh, you got the money on that matter, what did you do with the money? A.—I deposited it in the Farmers & Merchants Bank of Cavalier at that time in trust.

"Q.—And you still have control over it? A.—Yes."

Re-cross Examination

"Q.—If no conveyance was had to whom will you return this money, Mr. McIntosh?"

Objection overruled.

"A.—That is what I was thinking, it would be on the determination of the Court.

" *  *  *  The Court: Does he know to whom he will return it? A.—No I don't. It is in trust.

"Q.—Whom is it in trust to? A.—It is just in trust, on trust account. I am going to hold it there until I have reasonable ground on which to return it to someone entitled to it.

"Q.—To whom will you convey it if there is no determination of that? A.—I am waiting for a determination of this action.

*    *    *    *    *    *

"A.—I said I would hold this money until the final determination of this action before disposing of it.

"Q.—Assuming that the final determination of this action if there is to be no conveyance by the Syrup Estate, then what will you do with the money?

"Objection overruled. A.—I presume I will return that to where it came from.

"Q.—Where did it come from? A.—A. C. McCurdy."

I think a fair inference from the testimony of that conference in the office of McIntosh, and all the circumstances shown in evidence, is that McCurdy placed that $1,600 with McIntosh for the benefit of Pitcher to enable him to carry out his oral agreement to purchase that particular land. By McCurdy's instructions McIntosh wrote on the check, "For purchase price E½ SE¼ 16–162–56, Pembina County, N. D." McCurdy reserved no control over the money but directed what it should be used for. To finance that purchase Pitcher had asked McCurdy's help. To work out a system for doing that was the purpose of the conference.

"Generally, intention to create a trust may be determined by construction of and inference from what the trustor has said or done, the nature of a transaction, and surrounding circumstances." 54 Am.Jur.Trusts, Sec. 53, p. 62.

"Physical delivery of subject matter of a trust to the trustee, with sufficient indication of intention to create the trust, suffices as a complete and present disposition of property to establish the trust. An express trust exists by inference where money or property is delivered by one person to another to be held or paid over by the latter for a certain purpose or generally for the benefit of the former or a third person." 54 Am.Jur.Trusts, Sec. 62, p. 70.

To my mind the evidence clearly warrants the holding that an express trust was formed for the purpose of carrying out the oral agreement between Syrup and Pitcher for the sale and purchase of the land. The trust was established by McCurdy for Pitcher as beneficiary. McIntosh accepted the trusteeship.

Sec. 59–0104, NDRC 1943 provides that:

"An express trust is created as to the trustor and beneficiary by any words or acts of the trustor indicating with reasonable certainty:

"1. An intention on the part of the trustor to create a trust; and

"2. The subject, purpose, and beneficiary of the trust.

It is created as to the trustee by any words or acts of his indicating with reasonable certainty:

"1. His acceptance of the trust or his acknowledgment made upon sufficient consideration of its existence; and

"2. The subject, purpose, and beneficiary of the trust."

McCurdy's intention to create a trust and McIntosh's acceptance of this fund as a trust for the benefit of Pitcher is further shown by the fact that McIntosh has retained it all of this time. He says he will hold it "until final determination of this action." He can do that because legal title to the trust is in the trustee.

"The historic and universal rule, basic to the concept, origin, growth and scope of equity jurisdiction, is that a trustee is vested with a legal, as distinguishable from an equitable estate, which legal estate equity recognizes but compels to be used by the trustee in accordance with the terms of the trust and for the benefit of all beneficiaries, present and future." 54 Am.Jur.Trusts, Sec. 96, p. 89. See also Sec. 59–0201, NDRC 1943.

Mr. McIntosh is holding that money subject to the purpose of the trust. He has

notified the State Land Department thereof. If the decision of the district court were affirmed and specific performance of the land contract between Pitcher and Syrup is decreed, McIntosh must use that trust fund in carrying out that contract. He is ready to do that. Because of the trust arrangement McCurdy has no right to prevent that and he has not tried to do so. Not until the contract was found unenforcible so that it becomes impossible to carry out the object of the trust has McIntosh any right to let McCurdy have that money back. Not till then is the trust extinguished. Sec. 59-0217, NDRC 1943.

There is some suggestion in the testimony that the final deed from Syrup was to go to A. C. McCurdy. That, however, is explained by McIntosh's testimony when he says:

> "This money was paid to me by A. C. McCurdy for the benefit of Stanley Pitcher. It was A. C. McCurdy's money. I don't assume A. C. McCurdy was giving out the money without security—either he expected security in the way of trust deed or in the way of a mortgage."

The fact that McCurdy wanted security from Pitcher on that land, whether by deed or mortgage, for the advancement of the $1,600 has nothing to do with the original oral agreement between Pitcher and Syrup. It does not interfere with that in any way. Whatever arrangements were made in that regard were between McCurdy and Pitcher and agreed to by Syrup who said he would return with his wife and sign the deed. The court asked McIntosh: "Was the matter clear to you, Mr. McIntosh, that Pitcher was to have the land? Ans. It was." The arrangement assures the carrying out of Pitcher's oral agreement with Syrup if there is partial performance sufficient to take it out of the statute of frauds.

It was claimed by the appellant that there was not sufficient part performance of the contract by Pitcher. Aside from the arrangements for payment as heretofore set out, the evidence shows that Stanley Pitcher, shortly after the meeting in McIntosh's office took possession of the premises and commenced the work of improvement on them. It is true that the premises were leased by Pitcher's father for pasture and had been for some years. Pitcher's actions in entering upon the premises, however, could not be said to be under that lease. He entered upon the land for the purpose of making permanent improvements thereon for agriculture, not for pasturage. Further, the testimony shows that William Syrup came to Stanley Pitcher while he was working on the premises and had a conversation with him. That conversation Pitcher could not repeat but other witnesses testified that William Syrup told them he had been upon the premises and had seen the work Stanley was doing and expressed his satisfaction and approval thereof. The evidence shows that Stanley Pitcher borrowed a tractor and machinery from McCurdy for the purpose of clearing and breaking the land involved. There is evidence showing that the land was covered with poplar, oak and willow trees besides the ordinary scrub. Stanley would have to uproot trees, move them off and prepare the land for breaking which would also involve the removal of stones. The representative of the Soil Conservation Project testified that he made an aerial survey of the premises and found approximately 16 acres of breaking and that he saw felled trees. Stanley testified that he broke between 15 and 20 acres. That work is permanent improvement on the land. It covers almost one-fourth of the whole area involved. Pitcher's doing that work clearly indicates he was taking possession under the agreement of purchase and performing work of considerable value to the premises. Such possession was with the consent and approval of Syrup. There is sufficient showing of work to take the oral contract out of the statute of frauds.

Appellant cites Grinde Corporation v. Klindworth, 77 N.D. 597, 44 N.W.2d 417, as authority for his claim of insufficient part performance. The work done on the premises in that case, which was held insufficient to take the matter out of the statute of frauds, consisted of paying for the plowing and removing the rocks from a tract of 400 acres of land and seeding 200 of them to rye. As there were no alterations in the physical features of the land and the improvements were in harmony with the owner's plan for farming the land that did not indicate any permanent improvement and differentiates the case from the one at bar.

Appellant finally claims that the petitioner has an adequate remedy at law. On that I believe the evidence shows that an action for damages would not be adequate. Real estate is involved and the permanent improvement thereon. While evidence could be offered on the cost of the work done, the value of the improvement to the land is more difficult. In the Am.Law Institute, Restatement of the Law on Contracts, Section 360, p. 642, the principle is laid down that damages are regarded as inadequate remedy for the breach of a promise to transfer any interest in specific land. In the comment on that it is there said:

"The remedy in money damages for breach of a contract for the transfer of a specific tract of land is regarded as inadequate without regard to quantity, quality, or location. A specific tract is unique and impossible of duplication by the use of any amount of money. Specific performance is available to enforce a contract the purpose of which is the transfer of any recognized interest in land to the purchaser, even though it is less than a fee simple."

I think the judgment of the district court should be affirmed.